No. 96-105

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

GREGG A. HAFNER,

          Plaintiff and Appellant.

     v.

MONTANA DEPARTMENT OF LABOR AND
INDUSTRY and DUBRAY LAND SERVICES, INC.,

          Defendants and Respondents.

FILED

DEC 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Michael G. Eiselein; Lynaugh, Fitzgerald, Eiselein
               & Eakin, Billings, Montana

          For Respondents:

               Melanie A. Symons, Department of Labor & Industry,
               Helena, Montana

               Calvin J. Stacey; Stacey & Walen, Billings, Montana


                              Submitted on Briefs:   August 9, 1996

                                        Decided:   December 10, 1996

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellant, Gregg Hafner (Hafner), appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, affirming a Board of Labor Appeals' denial of unemployment insurance benefits. We affirm the District Court.

We restate the issue raised by Hafner as follows:

Did Hafner's failure to notify his employer of a conflict of interest constitute misconduct for purposes of unemployment compensation benefits?

## BACKGROUND

This case arises out of the Department of Labor's (the Department) denial of unemployment benefits to Hafner. Hafner appeals from the District Court's decision affirming the Board of Labor Appeals' (the Board) denial of unemployment benefits on the basis of misconduct.

Hafner was hired by respondent, DuBray Land Services, Inc. (DuBray) as a Right-of-Way agent in March of 1990. As a Right-of-Way agent for DuBray, Hafner's duties included purchasing easement rights for various companies. In preparation of Hafner's position as a Right-of-Way agent, DuBray sent Hafner to a training program. As part of the training program, Hafner took courses in "Ethics and the Right of Way Profession" and "Rules of Professional Conduct." Additionally, Hafner was a member of the International Right of Way Association. The Association adheres to a Code of Ethics, Ethical Rules and Standards of Conduct. Ethical Rule No. 6 of the Code of Ethics provides in part: "Members pledge to maintain a high

2

professional relationship with his/her client or employer."

Standard Two of the "Standards of Practice for the Right of Way

Professional" provides in part:

FULL DISCLOSURE

Full disclosure of all pertinent information requires, without reservation, disclosure to the client, employer or public, all relevant information a member possess [sic] with regard to the member's employment.

Interpretation:

1. Full disclosure to the client/employer means disclosure of:
    (a) conflicts of interest (including, but not limited to such items as personal, financial, emotional, employment; prior or current, or others).

While employed by DuBray, Hafner applied for and was, on a

probationary basis, given a job with Conoco, Inc. (Conoco). As a

pre-requisite to employment with Conoco, Hafner underwent a

physical examination. After receiving the results of Hafner's

physical examination, Conoco decided to terminate Hafner's

employment before he began working. Hafner contended that Conoco's

decision to terminate him was discriminatory and he filed a claim

against Conoco with the Montana Human Rights Commission. Hafner's

civil suit against Conoco continued for several years while he

continued to work for DuBray.

In 1992, while the Human Rights Commission complaint was still

pending, DuBray assigned Hafner to work on the Conoco account.

Hafner did not advise DuBray that he had a Human Rights Complaint

pending against Conoco. In handling the Conoco account, Hafner had

access to Conoco's files and a Conoco checking account. Despite

his pending civil suit, Hafner continued to work on the Conoco

3

account without informing DuBray of this conflict of interest. DuBray only became aware of the suit in December of 1994, when a Billings newspaper reported that this Court had reversed the trial court's granting of summary judgment for Conoco and remanded Hafner's claim for trial. Hafner v. Conoco (1994), 268 Mont. 396, 886 P.2d 947. When it became aware of the suit, DuBray decided to terminate Hafner by letter dated December 28, 1994, stating as follows:

Gregg Hafner

This letter is your notice that you are terminated for cause from your employment with DuBray Land Services, Inc. effective today, December 28, 1994. You will be given today two checks for your net pay for salary through today and vacation pay accumulated through today.

The reason for your termination for cause is that you are the Plaintiff in a lawsuit entitled Hafner v. Conoco, Cause No. 93-552 in Yellowstone County District Court, which lawsuit has only become known to this company through a newspaper article published in The Billings Gazette on Saturday, December 17, 1994, a copy of which is attached. This newspaper article was first delivered to me yesterday, December 27, 1994. In the meantime, for approximately two years you have been working on Conoco projects for DuBray Land Services, Inc. without informing the company of your lawsuit against Conoco. This is an untenable disregard for the interest of your employer and cannot be tolerated.

By the end of work today you must have all of your personal belongings removed from the premises of DuBray Land Services, Inc. In addition, you must turn in the company automobile and all sets of company car keys, all company credit cards and telephone cards, all company files in your possession (those for Conoco and otherwise), the Conoco checkbook, all company equipment and supplies, and your set of keys to the company office building. When you have turned over this property and cleaned out your personal property you will be given your checks for salary and vacation pay.

Thank you.

4

Following his termination from DuBray, Hafner filed a claim for unemployment benefits with the Department. Hafner's request was denied on the basis that he was terminated for misconduct. Hafner then filed an appeal with the Board. After determining that Hafner had been discharged for "misconduct," the Board denied Hafner's request for unemployment benefits pursuant to § 39-51-2303, MCA, and § 24.11.460, ARM. Next, Hafner filed a request for judicial review with the Thirteenth Judicial District Court, Yellowstone County. The District Court affirmed the Board's decision. Hafner has filed the instant appeal challenging the decision of the District Court's decision to affirm the Board's denial of unemployment benefits.

## DISCUSSION

Did Hafner's failure to notify his employer of a conflict of interest constitute misconduct for purposes of unemployment compensation benefits?

A District Court's review of a decision of the Board is limited by § 39-51-2410(5), MCA, which provides:

In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. . . .

In both Connolly v. Montana Bd. of Labor Appeals (1987), 226 Mont. 201, 734 P.2d 1211, and Stine v. Western Federal Savings Bank (1994), 266 Mont. 83, 87, 879 P.2d 53, 56, this Court held that the determination of "misconduct" in the context of an application for unemployment benefits "was a factual question, properly left to the

5

appeal's referee and the Board of Labor Appeals." Connolly, 734 P.2d at 1215. Having reviewed this issue in the present case, we reverse Connolly and Stine to the extent that they hold that "misconduct" is a question of fact and, for the reasons stated below, hold that the question of whether conduct rises to the level of "misconduct" is a question of law which this Court reviews for correctness.

Misconduct is defined by § 24.11.460(1), ARM, and includes:

(a) willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer;
(b) deliberate violations or *disregard of standards of behavior which the employer has the right to expect of an employee;*
(c) carelessness or negligence that causes or would likely cause serious bodily harm to the employer or fellow employee; or
(d) carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

(Emphasis added.) In addition, § 24.11.461(1)(f), ARM, explains:

(1) The followings acts are considered misconduct because the acts signify a willful and wanton disregard of the rights, title, and interests of the employer or a fellow employee. These acts include:

. . . .

(f) violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule[.]

The question of whether an employee has disregarded standards of behavior, been careless or negligent, or violated company rules is a question of fact. Whether those "facts" then constitute "misconduct" involves interpretation and application of the

6

Administrative Rules of Montana and is a legal conclusion reviewable by this Court.

Hafner argues that he has a constitutional right to pursue his discrimination claim against Conoco and that it is illegal for DuBray or anyone else to interfere with this claim or retaliate against him for exercising his right to sue. Section 49-2-301, MCA. His characterization of the issue presented assumes that he was terminated for having sued Conoco. He relies on the statement in the letter of termination which states: "The reason for your termination for cause is that you are the Plaintiff in a lawsuit entitled Hafner v. Conoco . . . ." When that statement, however, is put in the context of the whole letter, it is apparent that he was terminated not for suing Conoco, but for failing to advise DuBray that he was suing Conoco while at the same time continuing to work on Conoco files on behalf of DuBray. Hafner also emphasizes that while the appeals referee labeled his conduct as a conflict of interest, DuBray did not. Rather, DuBray's letter states that Hafner's conduct was an "untenable disregard for the interest of your employer and cannot be tolerated." This is not a distinction of significance. Failing to advise an employer of a conflict of interest can certainly constitute a disregard for the interests of the employer.

As restated, the question presented by this appeal is whether Hafner's failure to disclose his pending litigation against Conoco, while working on Conoco files for DuBray, constituted "misconduct."

The ethical rules of a Right-of-Way agent require full

7

disclosure of all conflicts of interest. Hafner's failure to advise his employer regarding his suit against DuBray's client, Conoco, was a violation of company policy as well as a violation of his ethical duty as a Right-of-Way agent.

The ethical rule imposed upon Hafner was reasonable. Hafner's employer, DuBray, was justified in expecting to be informed of conflicts of interest that arise between its employees and its clients. In addition, Hafner's training in 1990 made him fully aware of his obligation to reveal conflicts of interest. In failing to inform DuBray of his pending litigation against Conoco while continuing to work on the Conoco account on behalf of DuBray, Hafner willfully disregarded the interests of DuBray. This disregard of reasonable standards constitutes misconduct under § 24.11.460(1), ARM.

Hafner argues that there is no logic to holding that he could be fired for failing to advise DuBray of the suit against Conoco since:

> Like it or not, DuBray is prohibited from doing anything about Gregg's suit against his customer. He may not tell Gregg to drop the suit. He may not "suggest" that Gregg choose between his job and his lawsuit. We submit that in the complete absence of even the suggestion of any wrongdoing on the part of Gregg, DuBray could not even take Gregg off the Conoco projects, because to do so would seriously limit Gregg's usefulness as a DuBray employee and could for that reason subject him to an increased risk of layoff or termination. Such treatment would "otherwise discriminate" against Gregg and would amount to retaliation under the plain language of MCA 49-2-301.

We agree that, if Hafner had advised DuBray of his claim against Conoco in a timely fashion, DuBray would not have been justified in

firing Hafner or in having him choose between his job and his claim against Conoco. We do not, however, agree that DuBray could not have chosen to assign Hafner to non-Conoco accounts or, if he were already working on the Conoco account, reassign him to other accounts as DuBray had done with other employees.

Hafner points out that Conoco was aware of the situation from the start and had no objection to his continuing to work the Conoco file while pursuing his claim. That fact does not, however, change the fact that DuBray, as the employer, had a reasonable expectation that it would be advised if its employee had a conflict of interest so that DuBray could decide how to handle the situation. Conflict of interest rules are designed to work prospectively; to prevent conflicts from causing harm to employer or client. As the District Court stated, Hafner's argument misses the point. The fact that, in retrospect, the client was not damaged or offended, does not justify having kept the employer in the dark. Hafner should have advised DuBray of this situation when it arose so that DuBray would have been in a position to take appropriate in-house action to defuse any conflict.

Hafner argues that denying him unemployment benefits amounts to a denial of his constitutional right to pursue a discrimination claim. Specifically, Hafner maintains that his termination for violating an "ethical rule" infringed upon his inalienable right to pursue and maintain employment; a right which this Court has held to be necessary to enjoy one of "life's basic necessities" under Article II, section 3 of the Montana Constitution. In support of

9

his argument, Hafner cites to Wadsworth v. State (1996), 275 Mont. 287, 911 P.2d 1165. In Wadsworth, the plaintiff claimed that a Department of Revenue conflict of interest rule precluding outside employment violated his right to pursue life's basic necessities contained in the Montana Constitution. Wadsworth, 911 P.2d at 1173. This Court agreed with Wadsworth and held that the State did not demonstrate a compelling interest for applying the conflict of interest rule, thus his termination violated his constitutional right to pursue life's basic necessities under Article II, section 3 of the Montana Constitution. Wadsworth, 911 P.2d at 1175.

In contrast to Wadsworth, Hafner was not terminated for pursuing life's basic necessities nor is it accurate to say he was terminated for pursuing a discrimination claim against Conoco. Rather, Hafner was terminated because, without DuBray's knowledge, he continued to work on the Conoco account while he pursued a civil suit against Conoco. Hafner's access to a Conoco checking account and other confidential information created a conflict of interest of which DuBray had a right to be aware. Hafner's failure to disclose this conflict created a legitimate reason for DuBray to terminate him. We hold that DuBray had a legitimate expectation to be informed of the conflict of interest. Hafner's failure to inform DuBray of this conflict of interest constituted willful disregard of the interests of his employer and of reasonable standards of behavior which the employer had the right to expect of an employee. Section 24.11.460(1), ARM, and § 24.11.461(1)(f), ARM. The District Court's determination that Hafner's conduct

10

amounted to misconduct under § 39-51-2303(1), MCA, was correct. Stine, 879 P.2d at 56.

Accordingly, we affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr. dissenting.

I dissent. The majority opinion ignores the obvious and clearly stated reason for Hafner's dismissal and, further, countenances a result which the Department's own regulations would not allow, if they were correctly followed.

1. The reason for Hafner's termination was his status as a plaintiff in a case against Conoco.

This Court usually adheres to the general legal principle that, in the absence of an ambiguity, a document should be presumed to mean precisely what it says. We have repeatedly acknowledged this principle when construing contracts and statutes. See, for example, Carbon County v. Dain Bosworth, Inc. (1994), 265 Mont. 75, 874 P.2d 718; Farmers Alliance Mutual Insurance Co. v. Holeman (Mont. 1996), 924 P.2d 1315, 53 St.Rep. 904. Yet, for some reason, the majority ignores this very sensible legal rule in this case.

The dismissal letter from DuBray to Hafner states, unequivocally and in plain English, "[t]he reason for [Hafner's] termination for cause is that [he is] the Plaintiff in a lawsuit entitled Hafner v. Conoco." Nothing could be clearer. The majority, however, goes to great lengths to attempt to show that, while that may be what the letter says, that is not what the letter means. The majority contends that "[w]hen that statement is put in the context of the whole letter, it is apparent that [Hafner] was terminated not for suing Conoco, but for failing to advise DuBray that he was suing Conoco . . ." Such a conclusion is not apparent to me. The termination letter means no more, and no less, than exactly what it says: Hafner was fired because he was the

12

plaintiff in a lawsuit against Conoco. Such a firing is plainly illegal under § 49-2-301, MCA.

2. There is a significant difference between an actual conflict of interest and a potential conflict of interest.

The majority opinion fails to distinguish between a potential conflict of interest and an actual conflict of interest when the recognition and application of this distinction is crucial to the fair disposition of this case. Instead, the majority presumes the existence of an actual conflict of interest throughout its opinion, and this presumption dictates the opinion's obvious result.

In making such a presumption, the majority perpetuates an error originally made by the hearings examiner, whose findings and conclusions were accepted without question at every level. Like the majority of this Court, the hearings examiner failed to distinguish between an actual and a potential conflict of interest, but instead proceeded under the erroneous assumption that the there is no difference between the two.

In contrast, Hafner himself distinguished between an actual and a potential conflict of interest and has tried without success to make those involved in the appeals process understand what he was talking about. At the hearing, Hafner testified as follows:

> Q: In any event you see and would agree with me that at a minimum your claim against Conoco, Inc., could be potentially a conflict of interest, is that correct?
> Hafner: Potentially?
> Q: Yes.
> Hafner: Yes, I'll agree with potentially.
> Q: Okay. And you don't think that it ever turned into a conflict of interest because you governed yourself so that you did the best work possible, you put to the side your lawsuit against Conoco, Inc., and you did the

13

> job well and satisfactory [sic], is that a fair
> characterization?
> Hafner: That's fair.

Hafner did not feel that his actions constituted misconduct because the potential conflict of interest (which he freely acknowledged existed) never ripened into an actual conflict of interest. As noted above, this is a distinction that the hearings examiner never addressed. Instead, the examiner found that Hafner was "discharged from employment for failing to disclose a potential conflict of interest to [his] employer." (Emphasis added). The examiner further concluded that this failure to disclose a potential conflict of interest constituted misconduct and that DuBray's firing of Hafner was justified because of this misconduct.

But on its "claimant separation information" form, the Department itself states that "[t]o justify a finding of misconduct it must be shown that the matter was within the individual's control and the behavior must have had a direct adverse effect on the employer's business interests." (Emphasis added.) By this definition, the Department implicitly recognizes the difference between a potential conflict of interest, which does not directly adversely impact the employer's interests, and an actual conflict of interest, which does. In order for an employee's actions to constitute misconduct, the employer must show the existence of an actual conflict of interest which has a direct adverse effect on his business.

DuBray was asked during the hearing to explain how his business had been impacted by Hafner's actions. He replied that

14

"we haven't done a billable hour for Conoco since [Hafner] left our employ." Yet there is no explanation for how or why Hafner was responsible for this. Asked again what business interests Hafner's actions affected, DuBray responded,

> It affects my, the, my agent/client relationship that I have, and the fact that Mr. Hafner was carrying a checkbook that was Conoco's checkbook, and my checkbook and that he had an obligation to me to notify me of any potential conflicts of interest that he had. To notify Dubray Land Services. He did not.

(Emphasis added.) DuBray's response does not reveal any direct adverse effect on his business; rather, it reveals his belief that his firing of Hafner for a potential conflict of interest was justified. The fact is, however, that neither DuBray's testimony nor any other evidence presented demonstrated the direct adverse effect on the employer's business which is a prerequisite for a finding of misconduct.

Hafner's potential conflict of interest did not rise to the level of an actual conflict of interest. It did not have a direct adverse impact on DuBray's business and therefore did not constitute misconduct. Without a finding of misconduct, DuBray's firing of Hafner was not justified, and the hearings examiner's findings to the contrary are clearly erroneous. For these reasons, I dissent from the majority opinion.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing dissent.

_____
Justice

15

December 10, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael G. Eiselein, Esq.
Lynaugh, Fitzgerald, Eiselein & Eakin
P.O. Box 1729
Billings, MT 59103-1729

Melanie A. Symons
Department of Labor & Industry
P.O. Box 1728
Helena, MT 59624-1728

Calvin J. Stacey, Esq.
Stacey & Walen
P.O. Box 1139
Billings, MT 59103-1139

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy