No. 86-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MICHAEL H. CONNOLLY,

    Petitioner and Appellant,

 -vs-

MONTANA BOARD OF LABOR APPEALS, and
VALLEY VIEW ESTATES NURSING HOME,

    Respondent and Respondent.

---

APPEAL FROM: District Court of the Fourth Judicial District,
    In and for the County of Ravalli,
    The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    James A. Haynes, Hamilton, Montana

  For Respondent:

    Mary Anne Simpson, Dept. of Labor, Helena, Montana
    Worden, Thane & Haines; Molly Shepherd, Missoula,
    Montana

---

      Submitted on Briefs: Jan. 8, 1987

       Decided: March 30, 1987

Filed: 3/30/87

      Ethl M. Harrison

        Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Michael H. Connolly appeals an order entered in the Fourth Judicial District, Ravalli County, affirming the Board of Labor Appeals (Board) decision denying unemployment benefits.

We affirm.

Two issues are presented for our review:

(1) Whether the District Court erred in finding that the Board's decision was based on substantial credible evidence?

(2) Whether the District Court erred when it determined that no issues of law were before the court?

Appellant Connolly was hired by Valley View Estates Nursing Home in April 1981 as a Licensed Practical Nurse (LPN). As an LPN, Connolly was responsible for the immediate care of the facility's residents during the night shift. Connolly was also the night shift supervisor of four nurses' aides.

Valley View began experiencing problems with Connolly in the spring of 1983. At that time, a number of aides complained to Bonnie Hicks, director of nursing, that Connolly was harrassing and playing games with the nurses' aides. Administrators, aides and Connolly met in an effort to resolve the problem. Connolly was warned about his disruptive conduct.

In May 1984, the nurses' aides again complained to Hicks about Connolly. A staff meeting was held on June 20, 1984, with Connolly and the complaining aides present. The nurses' aides testified that Connolly picked on them and played games with them, including directing them to check on residents who were asleep, dry, and did not need to have their bedding changed. They further stated that Connolly,

their supervisor, often disappeared and that they could not find him when they needed him. Nurses' aide Joseph testified that Connolly insisted she take blood pressure readings despite her protest that she was not qualified and could not hear the heartbeats.

In response to these accusations, Connolly denied the existence of any staff problems. Hicks stated that, after the June 1984 meeting, she warned Connolly to stop harassing and playing games with the aides; that Connolly must not cause residents to be disturbed unnecessarily at night; that Connolly must not insist untrained aides take blood pressure readings; that his reports must be patient oriented and not subject to misinterpretation; and that he must communicate with the aides.

In August 1984, the nurses aides under Connolly's supervision again complained to director of nursing Hicks that Connolly was harassing them. Although, Connolly denied this allegation, the complaints continued throughout August 1984. In an attempt to determine the source of the night shift's problems, Hicks rotated a "chronic complainer" to another shift. However, additional complaints concerning Connolly's work performance began to surface in September 1984.

Nurses' aide Snell testified, under oath, at the appeals referee's hearing on December 19, 1984, that Connolly had been unnecessarily rough in changing a patient's bandage and had failed to change a patient's bloody dressing on several occasions. Nurse Snow testified that Connolly, on September 5, 1984, refused to aid a patient with an impacted stool, even though the patient had protested loudly and continuously during the night shift. Director of nursing Hicks testified that when she questioned Connolly about the patient, Connolly stated "it's Mr. Aishe, he thinks there's

something the matter with him but there isn't." Nurses' aide Snell, stated Aishe had been "hollering" during the night. Nurses' aide Joseph stated that she notified Connolly, but Connolly refused to remove Aishe's impacted stool. Nurse Pape testified that she informed Hicks on September 5, 1984, that Connolly, in violation of prescribed procedures, continued to take radial instead of apical pulses. Nurse Pape stated she instructed Connolly at least twice in the preceding twelve months to refrain from the less accurate radial pulse method. After questioning the residents, Hicks determined that Connolly had not taken apical pulses and had falsified pulse records.

On September 6, 1984, administrator Hash and director of nursing Hicks met to discuss the Aishe incident and the falsification of pulse records. They decided to terminate Connolly. However, in order to find a replacement, Connolly was not terminated until September 17, 1984.

Following termination, Connolly filed a claim for unemployment compensation. Valley View's assistant administrator responded that Connolly was terminated because he experienced difficulty when working with night aides and Connolly had falsified documentation. When Connolly was allowed benefits, administrator Hash informed the Montana Job Service representative that the assistant administrator of Valley View had not detailed the reasons for Connolly's termination, due to confidentiality rules. When Hash informed the Job Service that Connolly had falsified records, refused to attend to a patient in distress, disrupted the night shift and reported dressing changes that had not been made, Connolly was disqualified from receipt of benefits.

Appeals referee Maronick sustained Connolly's disqualification after a December 19, 1984, evidentiary hearing at which fourteen witnesses testified. Maronick concluded that

"[Connolly's] actions in record making, client care, and staff supervision showed a wanton disregard of the standards of behavior the employer had a right to expect of him . . . " After reviewing the record and hearing further testimony and argument, the Board of Labor Appeals by a two-to-one vote, determined there was not "any substantial evidence to warrant a modification or reversal" of Maronick's decision. The Board adopted the appeals referee's findings of fact and conclusions of law.

The District Court similarly concluded that the Board of Labor Appeals' findings of fact were supported by substantial evidence and that no issues of law were presented.

Issue I

Whether the District Court erred when it held that the Board's decision was based on substantial credible evidence?

The Montana legislature has strictly limited the scope of judicial review of decisions of the Board of Labor Appeals. Review is governed by § 39-51-2410(5), MCA, which provides that:

> [T]he findings of the board as to the facts, <u>if supported by evidence and in the absence of fraud, shall be conclusive</u> and the jurisdiction of said court shall be confined to questions of law. [Emphasis added.]

This Court has interpreted § 39-51-2410(5), MCA, in Noone v. Reeder (1968), 151 Mont. 248, 252, 441 P.2d 309, 312, stating:

> The court is not permitted to balance conflicting evidence in support of and in opposition to the Commission's findings of fact, nor to determine which is the more substantial evidence, nor to consider where the preponderance of the evidence lies; for to do so would be to

5

substitute the Court's view of the evidence for that of the Commission, and effectively nullify the conclusive character of the Commission's findings of fact as provided by statute.

When a District Court reviews a decision of the Board and adopts the decision of the Board of Labor Appeals, the court must first determine if substantial evidence supports the Board's factual findings. If so, those facts are conclusive. A court is permitted to make different findings only if it determines that no substantial evidence exists for the Board's findings. Dick Irvin, Inc. v. Mont. Dept. of Labor (Mont. 1983), 673 P.2d 1271, 1273, 40 St.Rep. 2086, 2089. Substantial evidence has been defined as:

[S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion or, stated another way, enough evidence to justify a refusal to direct a verdict on a factual issue in a jury trial.

Noone, 151 Mont. at 252, 441 P.2d at 311-312.

The District Court recognized, in its findings of fact and conclusions of law, that "the threshold question is whether the findings made by the Board of Labor Appeals [are] supported by the evidence." The following examination of the record demonstrates, the District Court correctly found the Board's decision was supported by substantial evidence. The Board adopted the appeals referee's findings in the following matters: (1) Connolly failed to comply with Valley View's apical pulse requirement and that Connolly had falsified medical charts; (2) Connolly did not examine or act to relieve a patient, after being advised of the problem; and (3) Connolly was deficient as a supervisor.

The District Court found that substantial credible evidence supported the appeals referee's decision. The court

6

properly declined to enter any factual findings of its own. Dick Irvin, Inc., 673 P.2d at 1273.

Issue II

Whether the District Court erred when it held that no issues of law were before the court?

Connolly contends the District Court erred when it held that Connolly's acts constituted misconduct. Secondly, Connolly contends the District Court erred when it held that Valley View did not waive its right to assert misconduct.

Pursuant to § 39-51-2410(5), MCA, the jurisdiction of a court reviewing decisions of the Board of Labor Appeals is confined to questions of law when the Board's findings are supported by evidence and in the absence of fraud. The District Court properly concluded that no issues of law were before the court. Section 39-51-2303, MCA, provides that

> [A]n individual shall be disqualified for benefits if he has been discharged: (1) for misconduct connected with his work or affecting his employment . . . [Emphasis added.]

In Gaunce v. Board of Labor Appeals (1974), 164 Mont. 445, 448, 524 P.2d 1108, 1110; citing Federal Aviation Administration v. Mont. State Dept. of Labor & Industry (Mont. 1984), 685 P.2d 365, 367, 41 St.Rep. 1542, 1545 this Court defined misconduct as:

> [A] deliberate, willful or wanton disregard of an employer's interest or of the standards of behavior which he has the right to expect of his employee or carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design.

Gaunce, 524 P.2d at 1110.

7

Connolly's employment history at Valley View is marred with allegations of disruption, insubordination and disregard of fellow employees. Both the appeal's referee found, and the Board of Labor Appeals found that allegations concerning Connolly's employment problems were accurate. Clearly, an employer has a right to expect an employee to maintain satisfactory standards of behavior. Connolly, as determined by the Board of Labor Appeals failed in the following areas: (1) he refused to follow a supervisor's instructions; (2) he falsified records, clearly in violation of his employer's policy; (3) he refused to assist a patient in distress, even though Connolly was the sole person on duty who was qualified to assist the patient; and (4) he repeatedly harassed and played games with his subordinates, although Connolly was previously warned to refrain from such conduct.

The District Court properly concluded that the determination of "misconduct" was a factual question, properly left to the appeal's referee and the Board of Labor Appeals.

Connolly also contends that because Valley View waited eleven days following the September 6, 1984 decision to terminate Connolly, Valley View should be estopped from claiming misconduct. Connolly claims that since waiver is a legal question, the District Court erred when it failed to make a ruling on the issue.

Connolly's argument fails. An employer is not obligated to immediately terminate an employee once such a decision has been made. However, a employer must act in good faith and in a reasonable manner. Dare v. Montana Petroleum Marketing Company (Mont. 1984), 687 P.2d 1015, 41 St.Rep. 1735. Here, Valley View acted reasonably when it waited eleven days to terminate Connolly in order that: (1) a replacement for

8

Connolly could be located, and (2) other Valley View employees could take their scheduled vacations.

We hold that Valley View did not waive its right to claim misconduct. Section 39-51-2303, MCA.

We affirm the District Court on all issues.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

9