No. 89-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

MARK N. SMITH,

        Plaintiff and Appellant,

  -vs-

ROOSEVELT COUNTY, MONTANA,
and SHERIFF JOHN Q. GRAINGER,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Arnie A. Hove, Circle, Montana

    For Respondent:

        Ralph J. Patch, Roosevelt County Attorney, Wolf Point,
Montana

---

Submitted on Briefs:  Oct. 13, 1989

Decided:    March 8, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Mark N. Smith, plaintiff and appellant, brought this action against Roosevelt County and Sheriff John Q. Grainger, defendants and respondents, alleging that he was unjustifiably terminated from his position as deputy sheriff with the Roosevelt County Sheriff's Department. Following a trial held in the Fifteenth Judicial District Court, Roosevelt County, a jury returned a verdict in favor of defendants. Smith appeals. We affirm.

The following issues are raised on appeal:

1. Whether the District Court erred in denying Smith's motion for summary judgment.

2. Whether Smith was denied a fair trial when the District Court denied his motion in limine and permitted testimony of other wrongdoings that were not the specific reason for his termination.

3. Whether substantial credible evidence supported the jury's finding that Sheriff Grainger justifiably terminated Smith.

4. Whether the District Court erred in refusing to allow opinion testimony on the legal definition of gross inefficiency.

5. Whether the District Court erred in allowing an investigative report to be submitted to the jury.

6. Whether the District Court erred in instructing the jury on the definitions of assault, battery and mistreatment of prisoners.

7. Whether the District Court erred in instructing the jury in accordance with Rule 404(b), M.R.Evid.

Roosevelt County Sheriff Dean Mahlum hired Mark N. Smith as a deputy sheriff on October 1, 1985. In November, 1986, John Q. Grainger was elected to replace Mahlum and assumed his duties as the new sheriff in January, 1987.

On July 6, 1988, a Roosevelt County dispatcher and a detention officer observed Smith throw a young, intoxicated prisoner onto the floor of the booking room of the county jail and proceed to beat

the prisoner's head into the floor. Both the dispatcher and the jailer charged that Smith's actions constituted an excessive use of force. Smith contended that the actions were needed to physically restrain the prisoner.

Following an investigation, Sheriff Grainger discharged Smith from his employment with the department. The termination letter, dated July 19, 1988, read in its entirety as follows:

> This letter is to inform you that the review of the charges in the complaint of (Deputy Mark Smith assaulting prisoner Julian Deserly) has been completed and the disposition finding is classified as "Sustained - The allegation was supported by the proper and sufficient evidence."
>
> The following is to inform you that your employment as a Deputy Sheriff is terminated effective on the above date. The cause for termination is as follows: On the evening of July 6, 1988, at approximately 5:50 p.m., you did assault a prisoner in your care and custody, namely, Julian Deserly, at the Roosevelt County Jail. This assault occurred without provocation of any kind on the part of the prisoner. Statements made by you to Sgt. Brockmeyer were decisive in indicating that you had no control over yourself at the time the assault occurred and that you, for some reason, wanted to hurt the prisoner.
>
> On separate occasions in 1986 there were investigations into the use of excessive force. Both are documented in your personnel file and on one incident it is documented that you were suspended without pay for a period of ten (10) days. On your transfer to the Wolf Point area statements were made by you, something to the effect of, "when I come into a new place I like to create as much hate and discontent as I can." This type of attitude and a pattern of using excessive force cannot be tolerated.
>
> Other problems such as failing to complete reports properly or even at all and the fact that you were sleeping on duty while assigned to guard the Agribition have not even been formally addressed yet, but I believe the matter at hand is the major concern of this Department and the disciplinary action taken makes these other violations a moot issue at this time.
>
> The incident with prisoner Julian Deserly is in violation of the Roosevelt County Sheriff's Department's Policies and Procedures, Chapter 7, Section 7, Subsection 8,

3

Criminal Conduct which reads as follows:

"Deputies will obey all laws of the United States, Montana State, and local jurisdictions. Violation of any law, an indictment or information filed against a deputy or a conviction will be cause for disciplinary action up to and including termination of employment. Internal discipline will not be dependent on the outcome of prosecution."

And the specific law that you violated is 45-5-204 Montana Codes Annotated, Mistreating Prisoners which reads as follows:

"45-5-204. Mistreating Prisoners. (1) A person commits the offense of mistreating prisoners if, being responsible for the care or custody of a prisoner, he purposely or knowingly: (a) assaults or otherwise injures a prisoner, (b) intimidates, threatens, endangers, or withholds reasonable necessities from the prisoner with the purpose to obtain a confession from him or for any other purpose; or (c) violates any civil right of a prisoner. (2) A person convicted of the offense of mistreating prisoners shall be removed from office or employment and shall be imprisoned in the state prison for a term not to exceed 10 years or be fined an amount not to exceed $50,000.00 or both."

Because Julian Deserly, the prisoner allegedly assaulted by Smith, was a Native American, the incident was referred to the Federal Bureau of Investigation. In the fall of 1988, an indictment was filed against Smith in Federal District Court, charging him with mistreatment of a prisoner. In January, 1989, a jury found Smith not guilty of the charges.

Prior to the federal indictment, Smith timely filed a petition and demand for jury trial with the Fifteenth Judicial District Court, Roosevelt County, pursuant to § 7-32-2109, MCA, which provides:

Any deputy sheriff whose employment is terminated may, within 30 days from the date of the termination of his employment, make application to the district court of the

4

county wherein the deputy was employed for a hearing before the court, with or without jury, on the charges resulting in the deputy's termination of employment or discharge.

Smith sought reinstatement of his employment with the sheriff's department pursuant to § 7-32-2110, MCA, which provides:

> In the event that a deputy prevails at the hearing provided for in 7-32-2109, he shall be entitled to be reinstated as a deputy sheriff at the same salary he received prior to his discharge or termination of employment and he shall also be entitled to any rights that might have accrued to his benefit prior to his discharge or termination of employment, including that salary which he would have received but for the termination.

Following his acquittal on the criminal charges in federal court, Smith filed a motion for summary judgment in the Roosevelt County District Court. At a hearing held February 21, 1989, the District Court denied Smith's motion for summary judgment and set trial for March 28, 1989. Following a three-day trial, the jury returned a verdict in favor of defendants, finding that Sheriff Grainger justifiably terminated Smith under § 7-32-2107, MCA.

I.

Whether the District Court erred in denying Smith's motion for summary judgment?

Summary judgment is proper only if the moving party demonstrates the complete absence of material questions of fact and that he is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In the present case, Smith, as the moving party, failed to shoulder his burden of proof.

A tenured deputy sheriff may be relieved of his employment only for one or more statutorily enumerated causes. These causes

5

are delineated in pertinent part in § 7-32-2107, MCA, as follows:

> (1) conviction of a felony subsequent to the commencement of such employment;
>
> . . .
>
> (4) sleeping while on duty;
>
> . . .
>
> (6) gross inefficiency in the performance of official duties.

Smith maintains that the sole cause of his termination was conviction of a felony offense. Therefore, he argues, when he was acquitted by a jury on the criminal charges of mistreatment, the reason for his termination was no longer valid. Consequently, he was entitled to summary judgment.

At the root of Smith's argument is a basic misunderstanding of the termination statute. Smith contends that a deputy sheriff may not be terminated for mistreating a prisoner unless he is convicted of a felony. This simply is not true. A deputy may also be terminated for gross inefficiency in the performance of official duties. A violation of official department policy may constitute gross inefficiency within the meaning of § 7-32-2107, MCA.

As pointed out in Smith's termination letter, the official policy of the Roosevelt County Sheriff's Department required deputies to obey all laws. A mere violation of the law constituted a violation of department policy, even if the violation did not result in a felony conviction. Therefore, Sheriff Grainger may have justifiably terminated Smith for gross inefficiency for mistreating a prisoner in his custody, a violation of both state

6

law and department policy.

Numerous questions of fact remained to be resolved by the jury. The jury needed to determine whether a preponderance of the evidence showed that Smith assaulted a prisoner in his care in violation of § 45-5-204, MCA, mistreatment of prisoners, and whether such a violation of law constituted gross inefficiency. The District Court did not err in leaving these factual determinations to the jury.

II.

Whether Smith was denied a fair trial when the District Court denied his motion in limine and permitted testimony of other wrongdoings that were not the specific cause of his termination.

Prior to trial, Smith made a motion in limine to excise paragraphs in the termination letter that referred to other alleged instances of misconduct, e.g., previous mistreatment of prisoners, failure to complete reports and sleeping while on duty. The District Court denied his motion.

Smith contends that the court's denial of his motion was in error because these alleged wrongdoings were irrelevant and highly prejudicial and should therefore have been kept from the jury. Whether this is so we need not discuss as we note that it was Smith who introduced the letter in its entirety to the jury. Thus, any prejudice that may have been caused by the letter's introduction must be laid at the feet of Smith himself. He cannot now claim that he was denied a fair trial by the admission of evidence that he himself introduced.

7

Smith also claims that he was denied a fair trial because the trial court permitted the jury to hear testimony concerning these other instances of misconduct. Once again, we note that this so-called highly prejudicial evidence was introduced by Smith in his case in chief. The transcripts demonstrate that Smith repeatedly solicited testimony from witnesses regarding those issues he now claims to be so prejudicial. We will not be misled by Smith's attempt to characterize his unsuccessful trial tactics as errors of the District Court.

## III.

Whether substantial credible evidence supported the jury's finding that Sheriff Grainger justifiably terminated Smith.

In the present case, two eye witnesses testified that, without apparent provocation, Smith grabbed the prisoner, Julian Deserly, by the hair, threw him down and slammed his face into the floor. Smith refuted this testimony, claiming that he was merely following standard procedure for restraining a resisting prisoner.

Even if the proof presented at trial conflicts, as it does in this case, this Court will not reweigh the evidence on appeal. It is uniquely within the province of the jury to determine the weight and credibility to be given each piece of proof. Weinberg v. Farmers State Bank of Worden (1988), 752 P.2d 719, 730, 45 St.Rep. 391, 405.

Viewed in the light most favorable to defendants, the evidence indicated that Smith mistreated Deserly. Therefore, we hold that substantial credible evidence supported the jury's finding that

8

Smith was justifiably terminated from his position.

                                    IV.

Whether the District Court erred in refusing to allow opinion testimony on the legal definition of gross inefficiency.

At trial, Smith attempted to introduce the opinion testimony of former Roosevelt County Sheriff Dean Mahlum and former Undersheriff Robert J. Damm regarding the legal definition of gross inefficiency. The court sustained defendants' objection to this testimony. Smith argues that this was error.

The District Court has broad discretion in determining the admissibility of evidence. We will not overturn its decision to refuse expert testimony absent an abuse of discretion. Massman v. City of Helena (1989), 773 P.2d 1206, 1210, 46 St.Rep. 764, 768.

Expert testimony in the form of an opinion may be allowed if the specialized knowledge of the expert will assist the trier of fact to understand the evidence or determine a fact in issue. Rule 702, M.R.Evid. Ordinarily, such testimony is allowed if the evidence or fact in issue is beyond the ken of the ordinary juror. Thus, we allow expert evidence regarding scientific or technical matters because such testimony is most generally needed to help jurors understand the evidence and determine the facts of the case.

In the present case, even if we assume that the former sheriff and undersheriff were qualified as experts to give an opinion as to a legal definition, there was no need to allow such expert testimony. At the close of the presentation of evidence, the jurors were instructed on the definition of gross inefficiency.

That instruction was not so highly technical as to be beyond the comprehension of the ordinary juror. Because expert opinion testimony was not needed to help the jurors understand the meaning of gross inefficiency, the District Court did not err in refusing such testimony.

## V.

Whether the District Court erred in allowing an investigative report to be submitted to the jury.

During his case in chief, Smith encouraged Dennis Brockmeyer, the detective who investigated the assault upon Julian Deserly, to read statements from his interview with Deserly. At that point, defendants asked that the report be marked and given to the jury. Thereupon, the report itself was entered into evidence. Smith objected to the exhibit on the grounds that it would be improper to submit the report to the jury.

As noted previously, the admissibility of evidence lies within the discretion of the trial court. Massman, 773 P.2d at 1210, 46 St.Rep. at 768. The District Court in the present case did not abuse its discretion in allowing the submission of the investigative report to the jury. Smith had already entered the information into the record when he asked Brockmeyer to read from the report. He can hardly complain that submitting the actual exhibit to the jury substantially prejudiced his position.

## VI.

Whether the District Court erred in instructing the jury on the definition of assault, battery and mistreatment of prisoners.

10

At trial, the District Court instructed the jury as follows:

Instruction No. 8: An assault is any intentional threat of harmful or offensive contact with another by force under circumstances which create a well-founded fear of such contact, coupled with the apparent present ability to carry out the threat. A battery is an intentional contact by one person with the person of another which is harmful or offensive.

Instruction No. 9: An arresting officer may use such force as is reasonably necessary to effect a lawful arrest. However, a police officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested as to such excessive force.

Instruction No. 10: You are instructed that a person commits the offense of mistreating prisoners if, being responsible for the care or custody of a prisoner, he purposely or knowingly assaults or otherwise injures a prisoner.

Smith acknowledges that these instructions are accurate statements of the law but he argues that they should not have been given because they misled and confused the jury. We do not agree.

Smith was terminated for mistreating a prisoner when he allegedly assaulted Julian Deserly. Therefore, the jury had to determine whether a preponderance of the evidence proved that an assault actually occurred. Instruction No. 8 aided the jury in its deliberations by informing it of the definitions of assault and battery. Instruction No. 9 aided the jury by instructing it on the amount of force an officer may use in making an arrest without committing a battery. Instruction No. 10 aided the jury by defining mistreatment, precisely the reason for Smith's termination.

These instructions were not misleading. On the contrary, they were needed to help the jury determine the ultimate fact in issue-

11

-whether Smith was justifiably fired for mistreating a prisoner in his custody.

## VII.

Whether the District Court erred in instructing the jury in accordance with Rule 404(b), M.R.Evid.

During Smith's case in chief as well as after the presentation of evidence, the District Court instructed the jury that evidence of Smith's other wrongdoings was not admitted to prove Smith's character but only to show guilty knowledge of the offense for which Smith was terminated, to show malice, to rebut any claim of accident or mistake, to show motive and to show plan and intent. This instruction was in accordance with Rule 404(b), M.R.Evid. Smith argues that the instruction was confusing and irrelevant and only admissible in criminal cases.

We need not discuss the merits, if any, of Smith's argument because, in perusing the record, we find a complete absence of any objection to the instruction. By failing to object to the instruction at the District Court level, Smith failed to preserve the issue for appeal. This Court will not review an issue raised for the first time on appeal. Weinberg, 752 P.2d at 724, 45 St.Rep. at 396.

Affirmed.

_____
Justice

We Concur:

12

_____
               Chief Justice

_____


_____


_____
               Justices

13