No. 99-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 329 [56 St.Rep. 1313]

297 Mont. 357

990 P.2d 1251

WADE H. McKAY, SR.,

Petitioner and Appellant,

v.

BOARD OF LABOR APPEALS,

MONTANA STATE DEPARTMENT

OF LABOR AND INDUSTRY,

Respondent and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Teton,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William D. Jacobsen, Thompson, Jacobsen & Potts, P.C.;

Great Falls, Montana

For Respondent:

Bernard A. Jacobs, Department of Labor and Industry;

Helena, Montana

Submitted on Briefs: September 2, 1999

Decided: December 22, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶ The Petitioner, Wade H. McKay, Sr., petitioned the District Court for the Ninth Judicial

District in Teton County for judicial review of the Department of Labor and Industry's denial of his

unemployment insurance benefits and for permission to submit new evidence. The District Court

held that there was substantial evidence to support the findings of fact of the Board of Labor

Appeals and that the new evidence McKay offered was immaterial. The District Court denied

McKay's petition. McKay appeals from the decision of the District Court. We reverse the

judgment of the District Court.

¶ The issue on appeal is:

¶ Did the District Court err when it affirmed the Board of Labor Appeals' conclusion that

Petitioner was disqualified for unemployment benefits for misconduct?

FACTUAL BACKGROUND

¶ Wade McKay, Sr. was a city police officer in Choteau, Montana for 13 years. On October

4, 1997, while off duty, McKay was involved in an altercation as a result of which he was charged with official misconduct. The Mayor of Choteau, Roger A. Kelly, suspended McKay with pay on October~5, 1997 and without pay shortly thereafter.

¶ On January 6, 1998, the District Court dismissed the State's charge of official misconduct without prejudice. The District Court concluded that the State failed to show probable cause. However, on January 12, 1998, the Choteau City Attorney charged McKay, in city court, with one count of disorderly conduct and two counts of misdemeanor assault. The charges were supported by the affidavit of the City Attorney. The affidavit was not based on personal knowledge, but on the facts related to him by others.

¶ A trial was held in city court and a jury convicted McKay of assault on May~13, 1998. McKay then appealed the conviction to District Court where he was entitled to a trial de novo.

¶ On May 13, 1998, Mayor Kelly sent McKay a notice of termination. The notice stated:

As Mayor of the City of Choteau . . . I am herewith, effective this date, discharging you from the Choteau Police Department for the reason and upon the grounds that you have been found guilty by a jury of the criminal charge of assault upon Toby Naylor which occurred on or about 2:00 a.m. on October~4, 1997 behind the Wagon Wheel Bar in Choteau, Montana.

¶ On May 18, 1998, McKay filed an unemployment insurance claim with the Department of Labor and Industry. In response to McKay's claim, the City of Choteau (Choteau) stated: "[h]e was found guilty of misdemeanor assault in a trial by jury. He also was given a copy of our policy and procedure manual in 1992 and he did violate our policy manual by being convicted of a

crime." No other examples of misconduct were alleged. On June 1, 1998, the Department of Labor and Industry denied McKay's claim. On June 4, 1998, McKay submitted a request for redetermination, which the Department of Labor and Industry denied on July 7, 1998 stating: "whether the City of Choteau was claiming you acted in your official capacity or not is irrelevant. It is a violation of the employer's policy to be involved in or committing a criminal offense." On July 13, 1998, McKay appealed to the Hearings Bureau of the Department of Labor and Industry. The Appeals Referee held a telephonic hearing. At the hearing, Choteau relied upon McKay's conviction in city court. Choteau's representative at the hearing, Chief Larson, stated:

He was not discharged because of misconduct. He was discharged because he was found guilty by a jury of the criminal charge of assault. This is the letter that the Mayor presented to Mr. McKay. Basically, I think the letter speaks for itself.

No other evidence of misconduct was offered by the chief of police. Nor was McKay's actual conduct on the night in question ever discussed at the hearing. The Appeals Referee concluded that McKay was ineligible to receive benefits.

¶ On August 5, 1998, McKay appealed to the Department of Labor and Industry Board of Labor Appeals (the Board). The Board held a hearing, to which Choteau did not send a representative. The Board upheld the decision of the Appeals Referee.

¶ On October 14, 1998, McKay filed a petition in District Court asking the court to review the Board of Labor Appeals decision.

¶ On November 6, 1998, a jury trial de novo was held in McKay's appeal from his city court assault conviction and the jury found that McKay was not guilty. McKay then sought the District Court's permission to submit his acquittal, as new evidence, in his appeal from the Board's decision to affirm the denial of his unemployment insurance benefits. The District Court appears in its decision, to have taken judicial notice of acquittal, but concluded that it was immaterial.

¶ On March 25, 1999, the District Court dismissed McKay's petition for review. McKay then filed this appeal.

STANDARD OF REVIEW

¶ A district court's review of a decision of the Board of Labor Appeals is not governed by the Montana Administrative Procedure Act. Schneeman v. State, Dept. of Labor & Ind. (1993), 257 Mont. 254, 257, 848 P.2d 504, 506 (citing City of Billings v. State Bd. of Labor Appeals (1983), 204 Mont. 38, 663 P.2d 1167). The correct standard of review in the instant case is set forth at § 39_51_2410(5) and (6), MCA, which provide:

(5) In any judicial proceeding under 39_51_2406 through 39_51_2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law . . . .

(6) An appeal may be taken from the decision of the district court to the supreme court of Montana in the same manner, but not inconsistent with the provisions of this chapter, as is provided in civil cases. We have stated that: "'[s]upported by the evidence' means supported by substantial evidence, which is 'something more than a scintilla of evidence, but may be less than a

preponderance of the evidence.'" Potter v. Dept. of Labor and Ind. (1993), 258 Mont. 476,

479, 853 P.2d 1207, 1209 (citation omitted). Moreover, in Potter, we stated:

[T]he District Court must limit its review of the Board's findings to a consideration of whether they

are supported by substantial evidence, and the same standard applies to this Court. With regard

to questions of law, however, our task is to determine whether the agency's interpretation of the

law is correct.

Potter, 258 Mont. at 479, 853 P.2d at 1209 (citations omitted).

¶ In both Connolly v. Montana Board of Labor Appeals (1987), 226 Mont. 201, 734 P.2d

1211, and Stine v. Western Federal Savings Bank (1994), 266 Mont. 83, 87, 879 P.2d 53,

56, this Court held that the determination of "misconduct" in the context of an application for

unemployment benefits "was a factual question, properly left to the appeal's referee and the Board

of Labor Appeals." Connolly, 734 P.2d at 1215. In Hafner v. Montana Department of Labor

and Industry (1996), 280 Mont. 95, 99, 929 P.2d 233, 236, we overruled Connolly and Stine,

and held:

Having reviewed [whether the determination of misconduct is one of law or fact] in the present

case, we reverse Connolly and Stine to the extent that they hold that "misconduct" is a question of

fact and, for the reasons stated below, hold that the question of whether conduct rises to the level

of "misconduct" is a question of law which this Court reviews for correctness.

Hafner, 280 Mont. at 99, 929 P.2d at 236.

ISSUE 1

¶ Did the District Court err when it affirmed the Board of Labor Appeals' conclusion that Petitioner was disqualified for unemployment benefit for misconduct?

¶ The legislature enacted the "Unemployment Insurance Law," found at § 39-51-101, et seq., MCA, because economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of Montana's citizens. Section 39-51-102, MCA. The Law creates an unemployment insurance fund. Section 39-51-201(12), MCA. The purpose of the fund is to pay benefits to individuals who become unemployed and are eligible. Section 39-51-2103, MCA. An individual who engages in misconduct may be disqualified for benefits. Section § 39-51-2303, MCA. The Department has defined "misconduct" by administrative rule:

(1) Misconduct as used in 39-51-2303, MCA, includes, but is not limited to, the following conduct by a claimant:

(a) willful or wanton disregard of the rights, title, and interests of a fellow employee or the employer;

(b) deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

(c) carelessness or negligence that causes or would likely cause serious bodily harm to the employer or fellow employee; or

(d) carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

Rule 24.11.460(1), A.R.M. In Hafner, we held that pursuant to A.R.M. 24.11.460 and .461, that violation of a reasonable company rule that the employee knew, or should have known about, is considered misconduct because the act signifies a willful and wanton disregard of the rights, title, and interest of the employer or a fellow employee. Hafner, 280 Mont. at 100, 929 P.2d at 236.

¶ McKay contends that Choteau discharged him based solely on the fact that he was convicted of assault in city court. He asserts that since he was acquitted of assault, the Department no longer had any factual basis to conclude that he engaged in misconduct, and, therefore, had no basis to deny him unemployment insurance benefits.

¶ The Board responds that pursuant to our holding in Smith v. Roosevelt County (1990), 242 Mont. 27, 788 P.2d 895, McKay's mere violation of law may constitute a violation of Choteau's personnel policy even absent a criminal conviction. Our decision in Smith, however, is factually distinguishable.

¶ In Smith, a deputy sheriff allegedly beat an intoxicated prisoner. The sheriff discharged Smith for a number of reasons, including beating the prisoner. The Federal Bureau of Investigation indicted Smith for mistreatment of a prisoner. He was subsequently acquitted. Smith then filed an action alleging that his discharge was unjustified. Smith moved for summary judgment. He argued

that since he was acquitted of the FBI's charge, his discharge was unjustified. The District Court denied Smith summary judgment. We affirmed, holding:

A mere violation of the law constituted a violation of department policy, even if the violation did not result in a felony conviction. Therefore, Sheriff Grainger may have justifiably terminated Smith for gross inefficiency for mistreating a prisoner in his custody, a violation of both state law and department policy.

Numerous questions of fact remained to be resolved by the jury. The jury needed to determine whether a preponderance of the evidence showed that Smith assaulted a prisoner in his care in violation of Sec. 45_5_204, MCA, mistreatment of prisoners, and whether such a violation of law constituted gross inefficiency. The District Court did not err in leaving these factual determinations to the jury.

Smith, 242 Mont. at 32, 788 P.2d at 898. In essence, we held that Smith's acquittal did not conclusively prove that his employer's allegations were false. His employer was still permitted to introduce evidence that Smith was discharged for cause.

¶ This case is distinct from Smith. In Smith, we affirmed the District Court's denial of Smith's motion for summary judgment, and allowed the jury to determine the facts. In this case, the Department has already held an evidentiary hearing and made findings regarding the cause for McKay's denial of benefits following that hearing. McKay's employer testified at the hearing that McKay was terminated because of his conviction-not because of any other misconduct.

¶ The Department concluded that McKay engaged in misconduct based on the fact that he was convicted in city court. The only fact that Choteau alleged to support the conclusion that McKay engaged in misconduct was his criminal conviction. There was no other evidence of his conduct offered. The City Attorney's affidavit in support of Choteau's complaint against McKay for assault, was not admitted into the administrative record and would not have been substantial evidence in any event, since it was merely hearsay. Although the affidavit in support of the District Court charge of official misconduct was admitted without objection by McKay (who appeared pro se and was advised that the rules of evidence did not apply) that charge was dismissed for lack of probable cause. Furthermore, the affidavit was never discussed at the hearing and the referee gave no indication that it formed any basis for his decision-probably because the chief of police testified that it was not the basis for the city's decision. McKay was subsequently acquitted of assault on appeal in District Court. Therefore, the only factual predicate for a conclusion of misconduct no longer existed.

¶ The problem with the dissent is that it ignores the point of the majority opinion, which is that the only relevant finding is by agreement of the parties no longer a fact.

¶ The dissent contends that the appeals referee found that McKay was involved in an off-duty altercation, that the police department's policy prohibits involvement in a criminal offense, and that the manual requires city police officers to regulate their personal affairs so as not to bring discredit on the police department, and that substantial evidence supported those findings when made. That may be true. However, as previously pointed out in this opinion, there is no firsthand evidence in

the record from which to determine the nature of the altercation in which McKay was involved. He is no longer convicted of a criminal offense, and the police department's representative did not testify that he brought discredit to the police department in any way other than by being convicted of a criminal offense. Police Chief Glen Larsen, specifically testified that McKay was not discharged because of misconduct. He was discharged because he was found guilty of criminal assault. Furthermore, the only testimony in the record that comes close to a description of the altercation in which Larsen was involved, came from the following testimony given by Larsen. On October~4, 1997 at approximately 2 o'clock a.m., I was called out to backup my officer, Dennis Blougher. I was advised that there had been an altercation or fight at the Wagon Wheel Bar. When I got to the scene I was told by Officer Blougher that there had been an altercation-that possibly Wade McKay was involved in. He didn't know just exactly how he was involved.

The dissent points out that the only question is whether McKay's conduct meets the legal standard of misconduct which is a willful and wanton disregard of the employer's interests or deliberate disregard of standards of behavior the employer has the right to expect of an employee. However, the aforementioned testimony cannot meet that standard because it in no way describes McKay's conduct. Furthermore, McKay's employer at no time indicated that McKay's conduct met that standard except for his conviction.

¶ Finally, the dissent concludes that "McKay was 'involved in' the criminal offense of assault, notwithstanding the district court jury's failure to convict him of that offense under the stringent

beyond a reasonable doubt standard." The dissent is apparently willing to place more weight on the second-hand written description of McKay's conduct, than on the findings of the District Court jurors who heard testimony of actual witnesses who were subject to cross-examination. To do so is contrary to commonly accepted notions of due process. We decline to do so.

¶ Absent the city court conviction, no facts exist upon which to base a legal conclusion that McKay engaged in misconduct. We conclude that the District Court erred when it affirmed the Board of Labor Appeals' conclusion that McKay was disqualified for unemployment benefits for misconduct. Accordingly, we reverse the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, dissenting.

¶ I respectfully dissent from the Court's opinion.

¶ The Court correctly cites to § 39-51-2410(5), MCA, for the standard of review applicable to both the District Court and this Court in reviewing the Board's decision. Specifically, § 39-51-2410(5), MCA, provides that the Board's findings of fact are conclusive if supported by evidence and in the absence of fraud. In such an event, the only questions before the District Court and this Court are questions of law. Section 39-51-2410(5), MCA. In this case, I would affirm the District Court's conclusion that the pertinent findings of the Appeals Referee and the Board were supported by substantial evidence and that McKay's conduct during the altercation met the applicable definition of "misconduct."

¶ The Appeals Referee made a number of findings, including that McKay had been convicted of assault in city court. I agree with the Court that subsequent events--namely, McKay's acquittal of that charge in district court--rendered the "conviction" finding relatively irrelevant. That was not, however, the only finding--or the only relevant finding--made by the Appeals Referee.

¶ The Appeals Referee also found that the Choteau Police Department's policy and procedures manual prohibits involvement in--as well as commission of--a criminal offense, and that the same manual requires city police officers to regulate their personal affairs so as not to bring discredit to the police department. The manual was admitted at the hearing before the Appeals Referee, its contents are not disputed and, therefore, substantial evidence supports those findings.

¶ Finally, but importantly, the Appeals Referee found that McKay was involved in an off-duty altercation. The evidence of record regarding McKay's conduct--the Choteau City Attorney's sworn affidavit--was admitted on motion of McKay himself, and describes McKay's conduct as

follows:

On October 3, 1997 at approximately 4:00-4:30 p.m., WADE H. McKAY, SR., hereinafter named McKAY, a Choteau City Police Officer not on duty and in civilian clothes entered the Antler Bar in Choteau, Montana. He remained in said bar drinking alcoholic beverages. Thereafter at approximately 2:00 a.m. McKAY left said bar walking south on Main Street and then west on 2nd Street because he observed a group of individuals behind the Wagon Wheel Bar.

McKAY approached said individuals and then asked Bill Hodgskiss who he was and upon being informed he then asked Bill Hodgskiss how old he was and Hodgskiss replied he was 17 years old. Thereafter the Defendant told Bill Hodgskiss to get his ass home because it was past curfew. Bill Hodgskiss replied that he was there to pick up his brother, Ben Hodgskiss, and cousin, Levi Hodgskiss, as they were of legal age and had been drinking in the bar and therefore they chose not to drive their vehicles. However McKAY insisted Bill Hodgskiss leave the scene immediately.

After loud exchanges, Toby Naylor, age 22, approached McKAY and told him that Bill Hodgskiss was there to pick up his brother and cousin. McKAY then turned around and placed a bottle of beer and go cup on a vehicle. Then with a great amount of force, but with an open palm, McKAY pushed Toby Naylor in the chest causing him to fall backwards to the ground on his back and right side and skidded approximately 10 feet after hitting the ground from McKAY's blow to the chest.

McKAY then turned to Bill Hodgskiss and pointing said to him and the group that was standing there, "You and the rest of these sons of bitches get home" and at the same time pointing to all of the individuals standing there.

In my view, the affidavit constitutes substantial evidence in support of the Appeals Referee's finding that McKay was involved in an altercation.

¶ On this record, I would conclude that substantial evidence supports the Appeals Referee's findings. As a result, and since no question of fraud is raised, the findings are conclusive. See § 39-51-2410(5), MCA.

¶ The only remaining question, then, is whether McKay's conduct meets the legal standard of misconduct, which is willful or wanton disregard of the employer's interests or deliberate disregard of standards of behavior the employer has the right to expect of an employee. See Rule 24.11.460(1), A.R.M. The Appeals Referee, the Board and the District Court concluded that the conduct at issue was misconduct under that definition, and I agree. McKay was "involved in" the criminal offense of assault, notwithstanding the district court jury's failure to convict him of that offense under the stringent beyond a reasonable doubt standard. Moreover, it can hardly be disputed that McKay's conduct failed to meet the manual's requirement that police officers regulate their personal affairs so as not to bring discredit on the police department. In my view, McKay's conduct was conduct in willful or wanton disregard of the interests of his employer and conduct which deliberately disregarded standards of behavior the police department had the right to expect--and, pursuant to the manual, did expect--from its officers.

¶ I would affirm the District Court and I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY