DA 14-0035

**FILED**

October 21 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 255A

ROBERT SAYLER,

      Petitioner and Appellee,

   v.

MONTANA DEPARTMENT OF LABOR AND
INDUSTRY, INSURANCE DIVISION,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 13-237
                    Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Patricia L. Bik, Special Assistant Attorney General; Department of Labor
            and Industry; Helena, Montana

      For Appellee:

            Spencer T. MacDonald; MacDonald Law Office, PLLC; Missoula,
            Montana

                         Submitted on Briefs:  July 30, 2014
                                   Decided:  September 23, 2014
                               Amended:  October 21, 2014

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     When Robert Sayler, owner and president of a Montana corporation, stopped paying himself a salary but continued working, he applied for and received unemployment assistance.  To receive benefits, Sayler reported to the State of Montana Department of Labor and Industry (DLI) that he worked zero hours a week.  DLI eventually determined that Sayler misrepresented the hours he worked and that Sayler was ineligible for assistance.  DLI required Sayler to repay the benefits, and imposed an administrative penalty.  The Fourth Judicial District Court reversed in part, concluding that when Sayler drew no salary he was eligible to receive unemployment benefits and was not under a duty to report the hours he worked.  DLI appeals that decision.  We now address the following issues:

¶2     *1. Whether a corporate officer working full-time without pay for his corporation is engaged in employment under Montana's Unemployment Insurance Law and is required to report his hours of work when seeking unemployment benefits.*

¶3     *2. Whether DLI correctly imposed a penalty on Sayler for misrepresenting the amount of hours he worked.*

¶4     We reverse and remand for entry of judgment in favor of DLI.

### PROCEDURAL AND FACTUAL BACKGROUND

¶5     Robert Sayler owns and is president of Big Sky Bikes (BSB), a Montana corporation located in Missoula.  Sayler owns 51% of BSB and his wife owns the rest.  When BSB experienced a downturn in business in 2010, Sayler stopped taking a salary and, in November 2010, applied for unemployment benefits.  Despite no longer drawing

2

a salary, Sayler continued his customary 50-hour work weeks for BSB. Sayler continued working to keep the business going and to protect his personal investment in BSB until it again could turn a profit.

¶6 Between November 2010 and September 2012, Sayler periodically would collect unemployment benefits. For each week Sayler claimed benefits, the benefit application rules required Sayler to report "all hours of insured work and gross wages for insured work." Sayler repeatedly reported that he worked zero hours, and repeatedly received benefits.

¶7 BSB initiated a "bonus plan" in mid-2011. Under the "bonus plan," Sayler occasionally received a bonus or wage from BSB, and Sayler reported these earnings. As the earnings disqualified him from unemployment benefits, Sayler did not receive benefits for the weeks he reported earnings.

¶8 In September 2012, DLI audited BSB. During the audit, Sayler admitted that he worked 50 hours a week. The auditor referred the matter to the Claims Investigation Unit. The following month, DLI determined that Sayler had wrongfully received benefits. DLI calculated the amount of overpaid benefits to be $28,387.00. DLI ordered Sayler to repay these benefits, along with a $9,367.71 penalty. Sayler requested a redetermination, but DLI affirmed its decision. Sayler appealed.

¶9 In January 2013, a Hearing Officer (Hearing Officer) issued a decision affirming DLI's determination. The Hearing Officer agreed that Sayler had not been "totally unemployed" when he continued to work. The Hearing Officer also found that Sayler

was not credible when he testified that he did not think he had to report his hours of work.

¶10 Sayler appealed the Hearing Officer's decision to the Board of Labor Appeals (Board). In February 2013, the Board concluded that substantial evidence supported the Hearing Officer's findings and that the Hearing Officer had correctly applied the law. The Board adopted and affirmed the Hearing Officer's decision.

¶11 Sayler sought judicial review in the Fourth Judicial District Court. The District Court affirmed in part, reversed in part, and remanded. The court determined that the Board had included factual inaccuracies in its decision—specifically, the Board had asserted that Sayler had failed to report his bonuses in 2011 when in fact Sayler had reported the bonuses. The court also disagreed with the Board's and the Hearing Officer's interpretation of the law as it applies to corporate officers. The court concluded that Sayler was required to report his hours only during the period of time when BSB adopted the "bonus plan" in 2011. Outside the "bonus plan" period, the court concluded that Sayler was not working for a wage or under a contract for hire, so he did not need to report his work and was eligible to receive benefits.

¶12 DLI appeals the District Court's interpretation of the law.

**STANDARD OF REVIEW**

¶13 When a district court reviews ~~an agency's decision that is subject to the Montana Administrative Procedures Act~~ a decision by the Board of Labor Appeals, the court reviews conclusions of law for correctness. *~~Briese v. Mont. Pyb. Emps. Ret. Bd.~~, 2012*

4

MT 192, ¶ 11, 366 Mont. 148, 285 P.3d 550 *McKay v. Bd. of Labor Appeals*, 1999 MT 329, ¶ 13, 297 Mont. 357, 990 P.2 1251. The same standard applies for this Court's later review of the district court decision. *Briese*, ¶ 11 *Gary and Leo's Fresh Foods, Inc. v. Mont. Dept. of Labor & Indus.*, 2012 MT 219, ¶ 12, 366 Mont. 313, 286 P.3d 1218.

## DISCUSSION

¶14    *1. Whether a corporate officer working full-time without pay for his corporation is engaged in employment under Montana's Unemployment Insurance Law and is required to report his hours of work when seeking unemployment benefits.*

¶15    Under Montana's Unemployment Insurance Law, unemployment assistance is for "the benefit of persons unemployed through no fault of their own." Section 39-51-102(3), MCA. The law accordingly requires that a person be "totally unemployed" to receive benefits. Section 39-51-201(27), MCA. A person is "totally unemployed" when the person meets two criteria measured on a weekly basis: (1) the person does "not perform any work in employment," and (2) the person does "not earn any wages for employment." Section 39-51-2101(1), MCA (2009).[1]

¶16    The legislature has provided a definition of "employment," and, by extension, "work in employment." Employment includes "service . . . by an officer of a corporation . . . performed for wages or under any contract of hire, written or oral, express or implied." Section 39-51-203(1), MCA. To qualify as employment, then, the service

---

[1]  The legislature amended the statute in 2011, but all the pertinent language remained the same as among the two versions that applied when Sayler received benefits. Unless otherwise noted, reference is to the 2009 version of the MCA.

5

must either be (1) for wages, (2) under an express contract, or (3) under an implied contract. Section 39-51-203(1), MCA.

¶17 While there is no express contract in the record, DLI argues that the record evinces an implied contract. The existence of a contract ordinarily is a question of law. *Chipman v. Nw. Healthcare Corp.*, 2014 MT 15, ¶ 12, 373 Mont. 360, 317 P.3d 182. A contract is formed through the consent of identifiable parties for a lawful object, backed by consideration. Section 28-2-102, MCA. A contract is implied when it is manifested by the conduct rather than by the words of the contracting parties. Section 28-2-103, MCA.

¶18 The record establishes that there was an implied contract between Sayler and BSB. Even after he stopped taking a salary, Sayler continued working 50 hours a week for BSB. The consideration for that work becomes apparent through examining Sayler's relationship with BSB. Sayler was not donating 50 hours a week to a not-for-profit entity. Rather, BSB was Sayler's business; he owned 51% of it, and his wife the rest. By continuing to work without a salary, Sayler increased BSB's worth, with the expectation that it would benefit him. In Sayler's own words, he continued working for BSB without pay because he had "a large personal investment [in] the business," and intended to work until BSB again became profitable. DLI Hr'g Tr. 83:20-24, Dec. 26, 2012.

¶19 Because Sayler was a corporate officer, performing service under an implied contract, he was performing "work in employment." Section 39-51-203(1), MCA. The plain language of § 39-51-2101(1), MCA, requires that, in order to be "totally unemployed," a person must perform no work *and* receive no wages. It is thus ultimately

6

of no consequence to Sayler's employment status that he received no wages for his work outside the "bonus plan" period. The District Court erred as a matter of law in construing the statute otherwise.

¶20 Sayler argues nonetheless that he did nothing wrong by reporting zero hours a week because he was required to report only "insured work." *See* Admin. R. M. 24.11.443(4) (2006) ("A claimant must report all hours of *insured work* and gross wages for insured work for each week claimed.") (emphasis added). The problem with this argument is that "insured work" means the same thing as "employment." Admin. R. M. 24.11.204(20) (2006) ("'Insured work' means . . . employment, as defined in 39-51-203, MCA . . . ."). In other words, "insured work" includes a corporate officer's service under an implied contract. Section 39-51-203(1), MCA. The same implied contract that rendered Sayler ineligible for unemployment benefits also placed him under a duty to report his weekly hours of work. We hold that Sayler was employed and under a duty to report his hours of work, and that the abdication of that duty led to his wrongful receipt of benefits.

¶21 *2. Whether DLI correctly imposed a penalty on Sayler for misrepresenting the amount of hours he worked.*

¶22 Sayler argues that DLI incorrectly imposed an administrative penalty in addition to requiring Sayler to repay his wrongfully received benefits.

¶23 "A person who makes a false statement or representation knowing it to be false or who knowingly fails to disclose a material fact in order to obtain or increase any benefit" faces certain consequences. Section 39-51-3201(1)(a), MCA. One consequence is that

7

the person is "required to repay . . . a sum equal to the amount wrongfully received by the individual, plus the department may assess a penalty not to exceed 100% of the fraudulently obtained benefits." Section 39-51-3201(1)(a)(ii), MCA. DLI set the penalty for a first-time offense during the pertinent time period in this case to be equal to 33% of the fraudulently obtained benefits. Admin. R. M. 24.11.1209 (2000).

¶24 As recounted above, Sayler's argument before this Court has been that he accurately represented the hours he worked because he was under no duty to report his hours of work while not receiving a wage. We have concluded that this argument is incorrect as a matter of law and that Sayler was under a duty to report his hours of work. The Hearing Officer found that Sayler knowingly misrepresented his hours of work and that Sayler's claimed misinterpretation of "insured work" was "not credible." Sayler does not directly contest these factual findings, but instead relies on his argument that DLI incorrectly applied the law. Based on our determination that DLI's interpretation of the law is correct, the Hearing Officer's conclusion that there was a knowing misrepresentation must stand.

¶25 The consequences of a knowing misrepresentation are clear under the law. The legislature granted DLI the power to assess penalties upon individuals who make misrepresentations. Section 39-51-3201(1)(a)(ii), MCA. DLI fixed the administrative penalty for a first-time offense at 33% of the wrongfully received benefits. Admin. R. M. 24.11.1209 (2000). In levying a 33% penalty on Sayler for his first offense, DLI acted according to its administrative rules and according to the law.

8

**CONCLUSION**

¶26 The District Court's November 19, 2013 order is reversed. We remand to the District Court for entry of judgment in accordance with this opinion.


/S/ BETH BAKER

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE