DA 10-0229

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 13

TERRY JOHNSON,

      Petitioner and Appellee,

  v.

WESTERN TRANSPORT, LLC,

      Respondent and Appellant,

  and

MONTANA DEPARTMENT OF LABOR, BOARD
OF LABOR APPEALS,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                  In and For the County of Lincoln, Cause No. DV 10-38
                  Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tom Singer and Jill Gerdrum, Axilon Law Group, Billings, Montana

      For Appellee (Johnson):

            S. Charles Sprinkle, Sprinkle Law Firm, Libby, Montana

                         Submitted on Briefs:  December 15, 2010
                                  Decided:  February 8, 2011

Filed:

                              _____
                                       Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The Nineteenth Judicial District Court, Lincoln County, entered an order reversing the Department of Labor and Industry's (Department) determination that Terry Johnson (Johnson) was not entitled to unemployment benefits, and granting Johnson such benefits. Johnson's former employer, Western Transport, LLC, (Western Transport) appeals.[1] We affirm in part and reverse in part.

¶2 Johnson began working for Western Transport as a local driver on April 13, 2009. He was hired to drive from his home in Libby, Montana, to Moyie, Idaho, pick up a load of wood chips and deliver them to Columbia Falls, Montana, then return to Moyie, Idaho, for a second load, deliver the second load to Columbia Falls, finally returning home to Libby. The total mileage was approximately 580 miles per day. Johnson was paid by the load.

¶3 Department of Transportation (DOT) regulations allow drivers to work 14 hours in one day, driving 11 hours. Drivers are personally responsible for following DOT rules and regulations. Johnson claims he could not do the route in the 14 hours allowed. To make it appear he was driving "legally," Johnson inaccurately reported his hours in his log book. Western Transport claims it reprimanded Johnson for driving over hours when it learned he had, but that Johnson did not turn in his driver's log in a timely fashion. Johnson denies being reprimanded.

---

[1] The Board of Labor Appeals (BLA) filed a Notice of Non-participation in this case, requesting the Court to take judicial notice of the standard of review for BLA decisions and reserving their right to intervene should issues pertaining to the BLA arise.

¶4 In mid-to-late April, 2009, Johnson spoke to a co-owner of Western Transport, Cari Goss, about "going over the road" as opposed to his current local job. Johnson decided to keep his current job, and possibly go over the road when his children went back to school. Johnson never told Cari Goss he had concerns about his route or that he was having problems making two runs per day.

¶5 On June 4, 2009, Johnson was speaking with his dispatcher and immediate supervisor, Richard Dowley, about his next haul when Johnson "told him I [Johnson] was not gonna haul loads illegally" and that "I [Johnson] wasn't going to haul that haul because [I] could not do it in the allotted amount of time. He told me if I didn't like it I could park my truck. I told him I would do so." June 4, 2009, was Johnson's last day with Western Transport.

¶6 Johnson applied for unemployment benefits, effective June 7, 2009. In his application for unemployment benefits, Johnson stated he left because "We were having to lie and fudge our log books in order to make a living. They didn't tell us to lie – they scheduled me to make two runs per day. If everything went well you could legally do the run in 12.5 hours. If anything went wrong we only had 1.5 hours that we could lose without going over on the log books." Johnson also claims he talked to "Jimmy and Richard" about his concerns "more than once." Western Transport claims that both Jimmy and Richard "had no idea of [Johnson's] concerns" and the last time they spoke to him was June 4, 2009, when he refused to take the haul.

¶7 Johnson also filed a complaint against Western Transport with the Wyoming Division of DOT. Johnson alleged Western Transport was non-compliant with drive time hours. The

3

Wyoming Division of DOT investigated and "certain instances of non-compliance as [Johnson] alleged were discovered." No specific instances were mentioned, and the investigator stated "that action we have taken with the carrier as a result of our investigation will result in prompt correction."

¶8     On July 13, 2009, the Unemployment Insurance Division (UID) determined Johnson did not qualify for unemployment benefits. Johnson requested a redetermination, and on September 22, 2009, UID upheld the original determination. Johnson had until October 2, 2009, to file an appeal. On October 12, 2009, Johnson filed an appeal. A telephonic hearing on his appeal was held October 28, 2009, and was reconvened on November 5, 2009. The two issues at the hearing were whether Johnson's October 12, 2009, appeal was timely, and whether Johnson was qualified to receive benefits. On November 6, 2009, the hearing's officer issued a decision upholding the decision of UID.

¶9     Johnson then appealed to the Board of Labor Appeals (BLA). The BLA held a telephonic hearing on January 6, 2010. Johnson was represented by an attorney, and Western Transport was represented by co-owner Rob Goss. On January 8, 2010, the BLA unanimously affirmed the decision of the hearing officer.

¶10    Johnson then appealed to the Nineteenth Judicial District Court. After briefing by both parties, the District Court reversed the BLA and granted Johnson unemployment benefits. From that order, Western Transport appeals.

¶11    Western Transport presents three issues on appeal, restated as follows:

¶12  *Issue One:  Whether the District Court erred in substituting its own findings of fact for those of the Board of Labor Appeals?*

¶13  *Issue Two:  Whether the District Court's conclusion of law that Johnson had good cause for failing to file a timely appeal is correct?*

¶14  *Issue Three:  Whether the District Court's conclusion of law that Johnson left his employment for good cause attributable to his employment is correct?*

¶15  Additional facts, pertinent to each issue, will be discussed below.

## STANDARD OF REVIEW

¶16  On judicial review, whether by a district court or this Court, the findings of the BLA as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of the court shall be confined to questions of law.  Section 39-51-2410(5), MCA; *American Agrijusters Co. v. Montana Dept. of Labor and Industry*, 1999 MT 241, ¶¶ 14-16, 296 Mont. 176, 988 P.2d 782; *Brothers v. Cargill, Inc.*, 276 Mont. 105, 109, 915 P.2d 226, 228 (1996).  "Supported by the evidence" means supported by substantial evidence.  *Ward v. Johnson*, 242 Mont. 225, 228, 790 P.2d 483, 485 (1990).

¶17  The reviewing court's first determination must be whether the BLA's findings of fact are supported by substantial evidence.  *Phoenix Physical Therapy v. Unemployment Insurance Division*, 284 Mont. 95, 99-100, 943 P.2d 523, 526 (1997).  Substantial evidence is something more than a scintilla of evidence, but less than a preponderance of the evidence.  *American Agrijusters*, ¶ 15.  If supported by substantial evidence, the BLA's findings of fact are conclusive.  *Phoenix Physical Therapy*, 284 Mont. at 99-100, 943 P.2d at 526.  This is

5

true even when there is also substantial evidence or even a preponderance of the evidence to the contrary. *See American Agrijusters*, ¶ 24. The reviewing court cannot enter its own findings of fact, different from those of the BLA, unless it determines the BLA's findings are not supported by substantial evidence. *Connolly v. Montana Board of Labor Appeals*, 226 Mont. 201, 205, 734 P.2d 1211, 1214 (1987) (overruled on other grounds); *Kirby Co. of Bozeman, Inc. v. Employment Security Division of the Montana State Department of Labor and Industry*, 189 Mont. 1, 6, 614 P.2d 1040, 1043 (1980).

¶18    It is impermissible for the reviewing court to balance conflicting evidence in support of and in opposition to the [BLA's] findings, determine which is the more substantial evidence, or consider where the preponderance of the evidence lies. *American Agrijusters*, ¶ 16; *Brothers*, 276 Mont. at 109, 915 P.2d at 228; *Ward*, 242 Mont. at 228, 790 P.2d at 485; *Phoenix Physical Therapy*, 284 Mont. 99, 943 P.2d 526; *Connolly,* 226 Mont. at 205, 734 P.2d at 1214. To do so would substitute the reviewing court's view of the evidence for that of the BLA, nullifying the conclusive nature of the BLA's findings. *Brothers*, 276 Mont. at 109, 915 P.2d at 228; *Ward*, 242 Mont. at 228, 790 P.2d at 485; *Phoenix Physical Therapy*, 284 Mont. at 99, 943 P.2d at 526; *Connolly*, 226 Mont. at 205, 734 P.2d at 1214. The reviewing court must decide whether substantial evidence supports the BLA's findings and not whether, on the same evidence, it would have arrived at the same conclusion. *Ward*, 242 Mont. at 228, 790 P.2d at 485.

## DISCUSSION

6

¶19    *Issue One:  Whether the District Court erred in substituting its own findings of fact*

*for those of the Board of Labor Appeals?*

¶20    Western Transport argues that the District Court reinterpreted evidence and failed to

apply the proper standard of review.  Johnson argues the District Court was correct in

making the findings "more complete."

¶21    Based upon the record as outlined above, the hearings officer made the following

findings of fact regarding Johnson's eligibility for unemployment benefits:

1.  Western Transport, LLC employed Johnson as a local driver beginning April
    13, 2009.  His last day of work was June 4, 2009.

2.  Drivers have a personal responsibility to follow the Department of
    Transportation (DOT) rules about drive time and accurate log books.  The
    DOT rules allow a driver to work 14 hours a day, driving 11 hours.  If a driver
    returns to his home each day, DOT allows the driver to work 16 hours, one
    day a week.

3.  Johnson lives in Libby, Montana.

4.  The employer hired Johnson to drive from his home in Libby to Moyie, Idaho
    (45 miles), load and make a return trip to Columbia Falls, Montana (145
    miles), return to Moyie (145 miles) for a second load to Columbia Falls (145
    miles), then return home to Libby (100 miles).

5.  Johnson found he could not do two runs a day.  The claimant violated the
    drive time hours and inaccurately reported his hours in his log book.  On June
    4, 2009, Johnson gave the dispatcher, Richard Dowley, same day notice he
    was quitting because he did not want to haul illegally.  Johnson called the
    Wyoming Division of DOT and filed a complaint after he quit stating the
    employer was noncompliant about drive time hours.

6.  On November 3, 2009, Johnson submitted a copy of the report from the
    Wyoming Division DOT which stated it had found some instances of
    noncompliance.  The report did not specify what the instances were, or
    whether the infractions were minor or major.

7. On November 3, 2009, the employer submitted a report from DOT, following an audit, stating their safety rating was satisfactory.

¶22 The District Court found these findings "accurate but incomplete." It found fault with findings four and five. First, regarding finding four, it found Johnson discussed the local versus over the road job when he applied for employment. The District Court's additional finding is incorrect and not supported by the record. The only testimony on that point was from Cari Goss, who testified that the discussion of going over the road took place approximately two weeks after Johnson was hired.

¶23 Regarding finding five, the District Court found Johnson's conversation with his dispatcher, Richard Dowley, was Johnson's attempt to "discuss the drive time problem." Johnson's testimony however, was that he called Dowley to give notice he was "not gonna haul illegally." Johnson then says Dowley told him "if I [Johnson] didn't like it, I could park my truck." The District Court interpreted that to mean Dowley did not try to "find a solution" to Johnson's problem. There is substantial evidence supporting two differing conclusions from this conversation – one, the BLA's determination, that Johnson called to quit; or two, the District Court's determination, that Johnson called to discuss the drive time problem and was told to "park his truck" which the District Court found to mean Johnson "could quit." Because there was substantial evidence that supported the BLA's determination, its finding of fact on this issue is conclusive. *Phoenix Physical Therapy*, 284 Mont. at 99-100, 943 P.2d at 526. This remains true even if "there is also substantial evidence or even a preponderance of the evidence to the contrary." *American Agrijusters*,

8

¶ 24. The District Court simply substituted its view of the evidence for that of the BLA's; it is not permitted to do so. *Brothers*, 276 Mont. at 109, 915 P.2d at 228; *Ward*, 242 Mont. at 228, 790 P.2d at 485; *Phoenix Physical Therapy*, 284 Mont. at 99, 943 P.2d at 526; *Connolly*, 226 Mont. at 205, 734 P.2d at 1214.

¶24    It was error for the District Court to re-interpret the evidence. The BLA's findings were supported by substantial evidence and were therefore conclusive. We reverse the District Court and affirm the findings of fact made by the BLA.

¶25    *Issue Two: Whether the District Court's conclusion of law that Johnson had good cause for failing to file a timely appeal is correct?*

¶26    Western Transport argues that Johnson's October 12, 2009, appeal of UID's September 22, 2009, redetermination was untimely because it was filed after the 10-day period for appeal expired and Johnson had no good cause to warrant an extension. Johnson argues he wanted to wait for the Wyoming Division of DOT report to bolster his allegations of drive time violations.

¶27    A redetermination is final unless appealed "within 10 days after the notification was mailed to the interested party's last-known address. The 10-day period may be extended for good cause." Section 39-51-2402(3), MCA.

¶28    UID's redetermination became final on September 22, 2009. Johnson was notified he had until October 2, 2009, to appeal the decision, but was told the time period could be extended for good cause. The term "good cause" was not defined for Johnson. The hearings officer determined that Johnson's reason for waiting to file his appeal - Johnson wanted the

9

Wyoming Division of DOT report to corroborate his allegations of drive time violations - established good cause. The BLA upheld this decision, as did the District Court. We find no error. It was reasonable for Johnson, acting pro se at that time, to believe he had good cause for waiting to file his appeal. We affirm the District Court on this issue.

¶29 *Issue Three: Whether the District Court's conclusion of law that Johnson left his employment for good cause attributable to his employment is correct?*

¶30 Western Transport argues that Johnson was ineligible to receive benefits because he failed to carry his burden of proving good cause attributable to the employment and Johnson did not give Western Transport a reasonable opportunity to correct his alleged problem. Johnson argues he meets all the statutory criteria for good cause.

¶31 A claimant "must be disqualified for benefits if the individual has left work without good cause attributable to the individual's employment." Section 39-51-2302(1), MCA. A claimant has left work with good cause attributable to employment if the claimant (1) had compelling reasons arising from the work environment that caused the claimant to leave; and (2) attempted to correct the problem in the work environment; and (3) informed the employer of the problem and gave the employer a reasonable opportunity to correct it. Admin. R. M. 24.11.457(1)(a). The term "compelling reasons" includes, but is not limited to, unreasonable actions by the employer concerning hours, wages, terms of employment or working conditions, including, but not limited to, reductions of 20% or more in the claimant's customary wages or hours. Admin. R. M. 24.11.457(2)(b).

10

¶32 The hearings officer found Johnson left work without good cause attributable to his employment because he did not give Cari Goss a reasonable opportunity to address his drive time problems, but rather gave notice to Dowley that he would not haul illegally – in essence, Johnson simply quit his job. The BLA affirmed the hearings officer, but also found that:

> [T]he preponderance of the evidence in the record supports that Johnson was not discharged and he left his employment without good cause attributable to the employment . . . [t]he Board further finds that there is insufficient evidence . . . of an unreasonable action by the employer concerning Johnson's hours, wages, or the terms of employment . . . Johnson made little attempt to correct any problems he had in the workplace and failed to give the employer a reasonable opportunity to correct any problems he had prior to leaving.

¶33 The District Court found that Johnson did attempt to correct the problem in the workplace by driving longer hours and altering his driving log books. The District Court also found, based on its own interpretation of Johnson's and Dowley's phone conversation, that Dowley did not try to find a solution and that Johnson had no responsibility to "go over his dispatcher's head to the owners of the company." Thus, according to the District Court, Johnson had given Western Transport a reasonable opportunity to correct the problem, the only option they offered was to "park your truck" (quit), so Johnson left his employment for good cause. The District Court went on to find that even if Johnson had spoken to Cari Goss, the only alternative was to make 1.5 hauls per day, which would result in a 25% reduction in his income. While a 25% reduction in income may constitute a compelling reason, it does not, alone, constitute good cause. Admin. R. M. 24.11.457.

11

¶34 Even assuming that Johnson established both a compelling reason and that he attempted to correct the problem in the workplace, we are still left with the BLA's conclusive fact – Johnson called Dowley to give notice that he would not haul illegally and quit his job. The District Court's facts to the contrary – that Johnson spoke to Dowley in order to correct the problem and the only option he offered was to "park your truck" (quit) - are irrelevant. Therefore, we reverse the District Court and reinstate the findings of the BLA that Johnson did not give the employer a reasonable opportunity to correct any problems he had prior to leaving.

## CONCLUSION

¶35 While we affirm the District Court's conclusion that Johnson had good cause for filing an untimely appeal, we reverse in all other respects. The BLA's findings are reinstated.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE