DA 11-0728

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 133

SHEILA CALLAHAN & FRIENDS, INC.,

　　　　Petitioner and Appellee,

　v.

STATE OF MONTANA, DEPARTMENT
OF LABOR AND INDUSTRY,

　　　　Respondent and Appellant.

APPEAL FROM:　District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 11-455
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Patricia L. Bik; Department of Labor-Legal Services; Helena, Montana

　　　　For Appellee:

　　　　Elizabeth O'Halloran; Milodragovich, Dale, Steinbrenner & Nygren, P.C.;
Missoula, Montana

Submitted on Briefs:　May 16, 2012

Decided:　June 26, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     The State of Montana, Department of Labor and Industry, appeals from the order of the Fourth Judicial District Court, Missoula County, granting the Petition for Review filed by Sheila Callahan & Friends, Inc. (SC&F) and reversing the decision of the Board of Labor Appeals.

¶2     We affirm the District Court's ruling and address the following issue:

¶3     *Did the District Court err by determining that SC&F is not chargeable for a pro rata share of the unemployment insurance benefits paid to a former employee because the employee voluntarily terminated her employment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     SC&F is a radio broadcasting company based in Missoula, Montana. Joni Mielke (Mielke) was employed by SC&F as a radio personality. Mielke and SC&F entered a one-year contract covering the time period from June 1, 2008 to May 31, 2009. Mielke performed programming, live "remotes" at station events, production, and voice tracking duties for SC&F. During the term of employment, SC&F evaluated Mielke as being an excellent radio personality and announcer but as underperforming other responsibilities because she either did not want to do them or preferred announcing-related duties. During the one-year contract period, SC&F's president Sheila Callahan and CFO Max Murphy discussed with Mielke the possibility of reconfiguring the contract for 2009-2010.

2

¶5     SC&F offered Mielke a one year contract for the 2009-2010 term with a different payment schedule and slightly different job duties.  On May 28, 2009, shortly before the expiration of the 2008-2009 contract, Mielke sent the following e-mail to Murphy:

> Even before you handed me the new contract to consider, I had concerns about making a commitment for the next year.  After discussing it with my family we decided it would be best if I focus on helping my mother through her current health crisis instead of accepting your offer.
>
> I am grateful for the opportunity you and Sheila have given me here.  I honestly mean that . . . thank you.  So, I'm scheduled to work Saturday until 6 and I know there is a remote that day . . . will my final check be June 3rd?

¶6     Mielke completed an exit interview prior to her departure and completed a form used by SC&F for departing employees.  On the form, Mielke indicated her reason for leaving was that she had "quit" and that her letter explaining why was "on file."  Mielke initialed the exit interview form next to each entry, including the entry indicating her reason for leaving was that she had quit, and she also signed the form.

¶7     After Mielke left her employment with SC&F, she was hired by another radio station.  After a brief employment with this subsequent employer, she was laid off and filed for unemployment benefits in October 2009.

¶8     The Department of Labor and Industry (Department) sent a Notice of Chargeability Determination to SC&F assessing a pro rata share of the costs of Mielke's unemployment insurance benefits to SC&F's experience rating account.  The Department administratively determined that Mielke was employed for SC&F on a contract basis during her base period of employment and that SC&F's account was chargeable for a portion of benefits drawn by Mielke.  SC&F requested a redetermination, arguing that

3

Mielke had voluntarily left her employment. The Department issued a Redetermination on May 18, 2010, affirming the initial Determination. An administrative hearing was then conducted by telephone on January 7, 2011. The hearing officer determined that Mielke neither voluntarily quit nor was discharged for misconduct and affirmed the decision to charge SC&F's account.

¶9 SC&F appealed to the Board of Labor Appeals (Board). The Board conducted a hearing and held that, under applicable statutes and rules, Mielke did not voluntarily terminate her employment but had "worked out the terms of her employment contract," which was of limited duration, and that SC&F's rating account was chargeable.

¶10 SC&F petitioned the District Court for judicial review. The District Court reversed the decision of the Board, holding that Mielke clearly stated she voluntarily left employment with SC&F due to a family illness, not because her contract was expiring, although continued employment was offered.

¶11 The Department appeals.

**STANDARD OF REVIEW**

¶12 Findings of the Board of Labor Appeals as to the facts are conclusive, and the jurisdiction of the court will be confined to questions of law if the findings are supported by evidence and in the absence of fraud. Section 39-51-2410(5), MCA; *Johnson v. W. Transp., LLC*, 2011 MT 13, ¶ 16, 359 Mont. 145, 247 P.3d 1094 (citations omitted). "Supported by evidence" means supported by substantial evidence, which is "something more than a scintilla of evidence, but may be less than a preponderance of the evidence." *Am. Agrijusters Co. v. Mont. Dept. of Lab. and Indus.*, 1999 MT 241, ¶ 15, 296 Mont.

4

176, 988 P.2d 782. We review questions of law for correctness. *Am. Agrijusters Co.,* ¶ 17.

## DISCUSSION

¶13 *Did the District Court err by determining that SC&F is not chargeable for a pro rata share of the unemployment insurance benefits paid to a former employee because the employee voluntarily terminated her employment?*

¶14 Montana law directs that unemployment compensation benefits paid to an unemployed worker "must be charged to the account of each of the claimant's base period employers" on a pro rata basis. Section 39-51-1214(1), MCA. A "base period" is defined as "the first 4 of the last 5 completed calendar quarters immediately preceding the first day of the individual's benefit year." Section 39-51-201(2)(a), MCA. Generally, a "benefit year" is the 52-week period "beginning with the first day of the calendar week in which an individual files a valid claim for benefits." Section 39-51-201(3), MCA.

¶15 SC&F does not dispute that it is a base period employer, but argues it qualifies for a statutory exemption from a charge to its account for Mielke's benefits under § 39-51-1214(2)(a), MCA. That section provides that a charge may not be made to the account of a covered employer with respect to benefits paid under the following situations: "(a) *if paid to a worker who terminated services voluntarily without good cause attributable to a covered employer* or who had been discharged for misconduct in connection with services." Section 39-51-1214(2)(a), MCA (emphasis added). SC&F argues that the District Court was correct in determining that the uncontroverted evidence established that Mielke voluntarily left employment.

5

¶16 The Department argues that Mielke did not voluntarily leave her employment with SC&F, but rather, the 2008-2009 contract expired by its terms, and Mielke was not obligated to negotiate or entertain a further contract with SC&F. The Department argues that the Board properly deemed Mielke's termination of employment a "layoff" by operation of Admin. R. M. 24.11.454A(6)(a), which applies to employment of "limited duration." The parties agree that Mielke's employment was pursuant to a limited-duration contract. The Rule provides:

> (6) The department shall impute the reason for separation from work of limited duration in the following manner:
>
> (a) when a worker agrees to accept employment of limited duration as specified by the employer, the department shall consider the worker to have been laid off due to a lack of work at the end of the duration agreed upon and the last day worked; or
>
> (b) when an employer agrees to employ a worker for a limited duration as specified by the worker, the department shall consider the worker to have voluntarily left work only when the worker has refused an offer by the employer to continue the same work beyond the limited duration. In the absence of a valid offer by the employer to continue the same work, the department shall consider the worker to have been laid off due to a lack of work on the last day worked.

¶17 The Department's argument focuses on the contract provisions and cites the standards for contract interpretation, as did the Hearing Officer, arguing that the language of the 2008-2009 contract is unambiguous, and the duty of the court is to apply the language as written. The Department then points out that SC&F's offer for the 2009-2010 contract "significantly modified terms and conditions of Mielke's employment" and that the two contracts "differed in important ways." The Department argues that these differences demonstrate that SC&F failed to offer Mielke the

6

opportunity "to continue the same work" as required by Rule 24.11.454A(6)(b), and consequently, the Rule requires that "the department shall consider the worker to have been laid off due to a lack of work on the last day worked." If Mielke is thus deemed to have been laid off by SC&F, then the company's account must be charged for a portion of Mielke's unemployment benefits.

¶18 The problem with the Department's position is that, regardless of the contract terms, the rules imputing the reason for work separation simply do not encompass the evidence in the record about what occurred in this case. Initially, we note that Rule 24.11.454A(6)(a) applies where the worker has agreed to accept employment of limited duration "as specified by the employer." Rule 24.11.454A(6)(b) applies where the employer has agreed to employment of limited duration "as specified by the worker." No findings were made regarding which party had specified the limited duration of the employment, and, as the District Court noted, there was testimony that indicated "the length of the 2008-2009 contract was mutually agreed on by the parties." More importantly, the Rules do not contemplate the facts here, that is, where the worker declines, without qualification, to consider any future work offered by the employer. The uncontested evidence is that Mielke told SC&F that she "had concerns about making a commitment for the next year" even before the 2009-2010 contract was offered to her and that she had decided to leave employment to help her mother. Under Rule 24.11.454A(6)(b), the Department "shall consider the worker to have voluntarily left work only when the worker has refused an offer by the employer to continue the same work." Here, Mielke refused *all* offers—necessarily including a theoretical offer to

7

continue the same work. Mielke was not merely faced with the lapse of a contract; she was voluntarily terminating employment altogether.

¶19 The Department argues the District Court improperly failed to defer to the Board's findings of facts. However, the error of the Board was primarily premised upon application of legal standards, in the nature of a conclusion of law ("Under the rules and guidelines of the Unemployment Insurance Laws, the evidence supports that Mielke did not voluntarily terminate her services with the employer . . . ."). Given the inapplicability of the imputation rules to the situation here, the District Court properly concluded that the evidence did not support the Board's determination that Mielke's work separation was involuntary.

¶20 A charge may not be made to the account of a covered employer with respect to benefits "if paid to a worker who terminated services voluntarily without good cause attributable to a covered employer . . . ." Section 39-51-1214(2)(a), MCA. SC&F is entitled to this statutory exclusion.

¶21 Affirmed.

_____
Justice

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON

8

/S/ PATRICIA COTTER
/S/ BETH BAKER


Justice Beth Baker, concurring.

¶22 The Court properly concludes that, under the unique facts of this case, the Department misapplied its rule in deeming Mielke to have been laid off when her contract with SC&F expired. The rule requires the Department to "impute the reason for separation from work" in different ways, depending on the circumstances of the separation and the nature of the employment relationship. Admin. R. M. 24.11.454A(3), (4), (6). Thus, if a worker gives notice of intent to leave work, the Department considers the worker to have left voluntarily if the "worker's notice of intent to leave work is valid." Admin. R. M. 24.11.454A(3)(a). On the other hand, where the employment constitutes "work of limited duration," the Department considers the worker to have been laid off at the end of the agreed-upon duration "specified by the employer." Admin. R. M. 24.11.454A(6)(a). Since the parties here entered into a contract for a specified term, the Department urges the Court to apply only subsection (6) of the rule.

¶23 Under the rule, a "valid notice" means "a formal, unconditional, specific communication between an individual worker and an employer . . . that provides notice of the date a worker intends to leave work voluntarily (quit)[.]" Admin. R. M. 24.11.454A(1). Neither the Hearing Officer nor the Board of Labor Appeals made any finding that Mielke's notice of intent to leave work was anything but a valid notice. The

9

Department cannot apply subsection (6) in a vacuum when an employee has given valid notice of her intent to quit.

¶24    The holding in this case should not, however, be seen to undermine the Department's legitimate interest, consistent with the unemployment benefits statutes, in extending benefits to a worker who leaves at the end of a fixed contract period and is subsequently laid off by another employer.  The employer who enjoys the benefits that accompany short-term employment contracts should not be able to escape responsibility for the safety net offered by unemployment insurance by unilaterally changing the terms and conditions of the contract and then arguing the employee was not laid off when she refused to accept them.


                              /S/ BETH BAKER