FILED

10/17/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0163

DA 17-0163

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 254

JOYCE CROUSE,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF
LABOR, AND MADISON COUNTY, MONTANA,

Respondents and Appellees.

APPEAL FROM:     District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DV-29-2016-21
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Brian K. Gallik, Gallik, Bremer & Molloy, P.C., Bozeman, Montana

For Appellee Madison County:

Maureen H. Lennon, Mitchell A. Young, MACo Defense Services,
Helena, Montana

Submitted on Briefs:  September 20, 2017

Decided:  October 17, 2017

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This is an appeal from a decision by the Unemployment Insurance Appeals Board (Board), and affirmed by the Fifth Judicial District Court, denying Joyce Crouse's (Crouse) claim for unemployment compensation benefits. We affirm.

¶2     We restate the issue on appeal as follows:

*Whether the District Court erred when it affirmed the Board's conclusion that Crouse was disqualified for unemployment benefits because her voluntary termination did not constitute "good cause" pursuant to § 39-51-2302, MCA.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Crouse was hired as Madison County Sanitarian in December 2013.[1] Her job duties included inspecting establishments for compliance with sanitation requirements and issuing septic permits to contractors. During her employment Crouse experienced a number of issues, including problems with contractors and co-workers.

¶4     On numerous occasions, contractors complained about how Crouse performed her job. Crouse attributes the contractor complaints to her being less flexible in approving septic permits and being more strict than her predecessor. Crouse also found an email from her secretary to Crouse's mentor, calling Crouse "clueless" and claiming other co-workers "dislike[d] her very much and would love to see her gone." This caused Crouse to frequently close herself off in her office.

---

[1] The following facts are taken from the Hearing Officer's February 12, 2016 decision and the District Court's order.

¶5 Crouse expressed her concerns about her working environment to the Madison County Commissioners (Commissioners). One Commissioner told her to "hang in there." Crouse's secretary was suspended and later let go by the Commissioners.

¶6 On August 6, 2014, the Commissioners sent Crouse her first written warning, which stated that she could expect disciplinary action if she failed to change her behavior regarding missed appointments, scheduling problems, and lack of communication. Many of the complaints received from contractors and customers concerned Crouse's timeliness in making it to appointments as well as the amount of time it took for Crouse to process applications. The Commissioners also expressed concern with Crouse double-booking appointments due to lack of communication with her secretary.

¶7 In April 2015, the Commissioners issued a second written warning to Crouse for being late to two more appointments. The Commissioners informed Crouse that she must call contractors when she was running late.

¶8 Crouse performed many inspections during the summer of 2015. Crouse denied three permits because the soil did not support the septic systems the contractors installed. A soil scientist agreed with Crouse's evaluations. One contractor went to Crouse's office and expressed his frustration with her denial of his permit. Other contractors contacted Commissioner James Hart, expressing their frustration with Crouse. One such interaction turned into a heated confrontation.

¶9 It was also during the summer of 2015 that additional concerns arose regarding Crouse's work performance. On September 2, 2015, the Commissioners hand-delivered Crouse a "due process letter," informing her that it appeared she had violated county

3

policies and that "termination due to an inability to adequately perform [her] duties may be warranted." The due process letter listed five areas of concern:

1. Regularly missing scheduled appointments with customers.
2. Lack of timely responses to customer e-mails, phone calls, appointments, permit approvals or disapprovals.
3. Lack of communication with your immediate supervisors to inform them of your request for time off from work.
4. Have not returned the County car to Madison County per Commissioners' request.
5. Consistently late with time sheet.

Crouse was given forty-eight hours to present her response to the Commissioners either verbally or in writing. While Crouse was denied the list of complaints, she was given a list of names of those who made the complaints.

¶10 On September 4, 2015, Crouse met with the Commissioners and asked for additional time to submit her responses in written form. Her request was denied. Crouse then presented her response to the Commissioners and they informed her they would reach a decision in ten to fourteen days.

¶11 Before the decision was reached Crouse handed in her written resignation notice, dated September 14, 2015. The resignation letter stated that Crouse had no other choice but to quit because of retaliation for performing her job duties, harassment, inability to work in a hostile work environment, and because she felt that she was facing certain termination.

¶12 After her resignation, Crouse filed a claim for unemployment benefits. Crouse asserted that the County's conduct created a hostile work environment which effectively

amounted to constructive discharge. She contends she had good cause to leave work, entitling her to benefits under § 39-51-2302(1), MCA.

¶13 The parties called in for a telephonic hearing before a Montana Department of Labor and Industry Department Hearing Officer on February 9, 2016. On February 12, 2016, the Hearing Officer concluded that Crouse resigned without good cause and denied her claim for unemployment benefits. Crouse appealed to the Unemployment Insurance Appeals Board. On March 23, 2016, the Board adopted the Hearing Officer's report, including the findings of fact.

¶14 Crouse filed a Petition for Judicial Review in the Fifth Judicial District Court. On February 21, 2017, the District Court affirmed Crouse's denial of unemployment compensation benefits. Crouse appeals.

**STANDARD OF REVIEW**

¶15 When reviewing the finality of a decision on claims for unemployment benefits made by the Unemployment Insurance Appeals Board, this Court must apply a statutory standard of review. Pursuant to § 39-51-2410(5), MCA, "the findings of the board as to the facts, if supported by evidence and in the absence of fraud, are conclusive and the jurisdiction of the court is confined to questions of law." More specifically, the findings of fact must be supported by substantial evidence. *Johnson v. W. Transp., LLC*, 2011 MT 13, ¶ 16, 359 Mont. 145, 247 P.3d 1094 (citing *Ward v. Johnson*, 242 Mont. 225, 228, 790 P.2d 483, 485 (1990)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." *Noone v. Reeder*, 151 Mont. 248, 252, 441 P.2d 309, 311-12 (1968) (citations omitted). It is more

5

than a scintilla, but less than a preponderance of the evidence. *Johnson*, ¶ 17 (citations omitted).

¶16 District courts review Board of Labor Appeals decisions on conclusions of law for correctness. *Sayler v. Mont. Dep't of Labor & Indus.*, 2014 MT 255A, ¶ 13, 376 Mont. 369, 336 P.3d 358 (citations omitted). This Court applies the same standard when reviewing the district court decision. *Gary & Leo's Fresh Foods, Inc. v. Mont. Dep't of Labor & Indus.*, 2012 MT 219, ¶ 12, 366 Mont. 313, 286 P.3d 1218 (citations omitted).

## DISCUSSION

¶17 *Issue: Whether the District Court erred when it affirmed the Board's conclusion that Crouse was disqualified for unemployment benefits because her voluntary termination did not constitute "good cause" pursuant to § 39-51-2302, MCA.*

¶18 An individual who leaves work without "good cause attributable to the individual's employment" will be disqualified for benefits. Section 39-51-2302(1), MCA. Part 23 of Title 39, chapter 51 in the Montana Code Annotated covers disqualification for benefits and does not define good cause. However, part 12 of Title 39, chapter 51, which addresses paid unemployment benefits that are chargeable to the employer's account, does. Good cause is clarified in § 39-51-1214, MCA. It provides good cause exists when: "(i) the claimant had compelling reasons arising from the work environment that caused the claimant to leave and the claimant; (A) attempted to correct the problem in the work environment; and (B) informed the employer of the problem and gave the employer reasonable opportunity to correct the problem." Section 39-51-1214(2)(a)(i)(A), (B), MCA. That definition is adopted by the Department of Labor and Industry in the Administrative Rules of Montana. Admin. R. M.

6

24.11.457(1)(a)(i), (ii). Compelling reasons include but are not limited to: "unreasonable actions by the employer concerning hours, wages, terms of employment, or working conditions . . ." or "unreasonable rules or discipline by the employer so severe as to constitute harassment." Section 39-51-1214(3)(b), (d), MCA; Admin. R. M. 24.11.457(2)(b), (d). The claimant bears the burden of proof to establish good cause. *Johnson*, ¶ 30.

¶19 The Board reviewed the record pursuant to Admin. R. M. 24.7.306 and found specific reasons for affirming the Hearing Officer's findings of fact. This Court must determine whether the Board's findings of fact are supported by substantial evidence. If there is substantial evidence, the Board's factual findings are conclusive. *Johnson*, ¶ 17 (citing *Phx. Physical Therapy v. Unemployment Ins. Div.*, 284 Mont. 95, 99, 943 P.2d 523, 526 (1997)).

¶20 The District Court found all but two of the Board's findings were supported by substantial evidence. The first finding that lacked substantial evidence was that Crouse did not work after September 4. There is substantial evidence in the record showing that Crouse returned to work on September 7 and worked through September 9. Second, the Board found that Crouse never requested additional time to present written findings before meeting with the Commissioners on September 4. There is substantial evidence in the record showing that Crouse did make such a request and that it was denied. We agree with the District Court. However, these two findings did not impact the Board's final decision and thus do not affect our review.

¶21 To establish she had good cause to leave her position as Sanitarian, Crouse is required to demonstrate she had a compelling reason arising from her work environment. Admin. R. M. 24.11.457(1)(a). Crouse alleges she had a compelling reason to leave her employment because she feared a potential unfavorable decision by the Commissioners regarding termination and that personality differences between co-workers and contractor aggression created a hostile working environment. She contends the Commissioners acted unreasonably.

¶22 This Court has yet to directly discuss the "compelling reasons" language of § 39-51-1214(3), MCA, in a published opinion.[2] However, Admin. R. M. 24.11.457 was cited by this Court in *Cruson v. Missoula Elec. Coop., Inc.*, 2015 MT 309, ¶ 19, 381 Mont. 304, 359 P.3d 98. Although the "reasonable opportunity" prong of the good cause test and not the "compelling reason" prong was at issue in *Cruson*, we still find the analysis helpful because this Court held that while Cruson may have had good reasons to leave his job at MEC, "evidence supports the Board's decision that those reasons were not 'compelling,' as defined by Admin. R. M. 24.11.457(2), in light of MEC's responsive actions." *Cruson*, ¶ 35.

¶23 We have reached decisions regarding Board of Labor Appeals cases by applying the term "good cause" more broadly. In *McCarthy v. Mont. Power Co.*, a woman voluntarily terminated her employment so that she could accompany her husband to

---

[2] The District Court attempted to address this gap by noting this Court's rationale from an unpublished opinion, *Huset v. State Bd. of Labor Appeals*, 2014 MT 271N, 377 Mont. 432, 348 P.3d 169. However, the *Huset* opinion is unpublished and the District Court did not cite it as precedent.

California for three months. *McCarthy v. Mont. Power Co.*, 143 Mont. 134, 138, 387 P.2d 438, 440-41 (1963). This Court held that while the woman may have subjectively thought she had good reason to leave her employment, her desire to be with her husband did not constitute good cause and thus, she was properly denied unemployment benefits. *McCarthy*, 143 Mont. at 140, 387 P.2d at 442. In *Sheila Callahan & Friends, Inc. v. Mont. Dep't of Labor & Indus.*, a woman voluntarily terminated her employment so that she could care for her mother. *Sheila Callahan & Friends, Inc. v. Mont. Dep't of Labor & Indus.*, 2012 MT 133, ¶¶ 5, 18, 365 Mont. 283, 280 P.3d 895. This Court held that the woman did not have good cause to leave her employment and she was denied unemployment benefits. *Callahan*, ¶ 20. While the District Court refers to these cases in its order, they are factually distinguishable. Crouse's voluntary termination was due to circumstances arising out of her work environment, whereas in *McCarthy* and *Callahan*, the employees voluntarily terminated their employment for familial reasons and circumstances arising outside of the work environment.

¶24 Crouse alleges she had a compelling reason to quit her position as Sanitarian because she felt she was facing certain termination as a result of the due process letter, creating a hostile work environment. Government employees are entitled to fair termination proceedings. To initiate a formal termination, public employers must send a "due process letter" to the employee. It describes the employer's concerns with the employee's work performance. The public employee is given an opportunity to respond and address those concerns. *See Bird v. Cascade Cnty.*, 2016 MT 345, ¶¶ 4, 6, 7, 386 Mont. 69, 386 P.3d 602 (Cascade County Board of Commissioners properly terminated

9

the employment of a woman by sending her a reprimand letter that addressed job performance concerns, and later a due process letter further detailing the Commissioners' reasons for discharge). Here, the Commissioners sent the due process letter to Crouse after sending warning letters in August 2014 and April 2015. Despite these warnings, the Commissioners continued to receive complaints. The due process letter gave Crouse the opportunity to demonstrate to the Commissioners that they should continue her employment. However, Crouse did not avail herself of that opportunity. Crouse did not have a compelling reason to quit because she feared termination after receiving a due process letter.

¶25 Crouse alleges that the tension with co-workers, and a lack of response from the Commissioners regarding this tension, contributed to a hostile work environment that provided her with a compelling reason to voluntarily terminate her employment. The District Court determined that allegations of hostile working conditions did not support her argument that she had good cause to resign. Other courts have reached similar conclusions. In *Esselman v. Job Serv. N.D.*, the North Dakota Supreme Court held that although Michelle Esselman felt intimidated and verbally attacked by her co-workers, she did not have good cause to quit. *Esselman v. Job Serv. N.D.*, 548 N.W.2d 400, 403-05 (N.D. 1996). The North Dakota Supreme Court also noted testimony that "the stress and tension in the office was primarily caused by 'a lack of communication' and 'maybe some personality conflicts.'" *Esselman*, 548 N.W.2d at 404. The tension between Crouse and her co-workers did not give her a compelling reason to leave her position as Sanitarian.

¶26 Crouse faced numerous complaints from contractors. Crouse argues these complaints added to the hostile work environment and that the Commissioners failed to address them, giving her a compelling reason to voluntarily terminate her employment. Crouse did not present evidence as to any specific actions that the County should have taken. In fact, a review of the record shows that the Commissioners did address contractor complaints. Commissioner Hart met with contractors who were upset with Crouse's work performance and even defended Crouse in a heated meeting with one contractor.

¶27 It was also these complaints that gave rise to the reprimand letters sent to Crouse. While Crouse argues complaints were made because she was stricter in her enforcement of sanitation rules, evidence in the record indicates other factors. Crouse missed and was late to numerous appointments with contractors, and that conduct apparently continued even after the Commissioners' first letter was given to Crouse. Noting that she was asked by a Commissioner at the September 4 meeting why she refused to issue a particular permit, Crouse asserts the Commissioner asked her to violate her duties and the law. However, Commissioner Shultz testified that the Commissioners never asked Crouse to violate the law, and in fact, none of the reprimand letters sent to Crouse mentioned concern with Crouse's application of the law as Sanitarian. The record does not support this assertion.

¶28 Crouse voluntarily resigned her position with the County. Montana law precludes awarding unemployment benefits to former employees unless they can demonstrate they had good cause to resign. Section 39-51-2302(1), MCA. Administrative Rule of

11

Montana 24.11.457 further defines the term good cause in the context of employment disputes. The claimant had to have a compelling reason based within the employment relationship to leave, and must have made an attempt to resolve the problem and give the employer an opportunity to correct it.

## CONCLUSION

¶29 Crouse has not satisfied her burden to establish that she left her position as Madison County Sanitarian for good cause. The findings of the Board were supported by substantial evidence; as such they are conclusive. The District Court correctly affirmed the Board's decision to deny Crouse's claim for benefits because she voluntarily resigned her position.

¶30 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR