FILED

06/11/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0471

DA 23-0471

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 125N

BRENDA ZASTOUPIL,

      Petitioner and Appellant,

    v.

DEPARTMENT OF LABOR & INDUSTRY,
UNEMPLOYMENT INSURANCE APPEALS BOARD,
AND RYAN RESTAURANT CORPORATION,

      Respondents and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                 In and For the County of Rosebud, Cause No. DV 2023-05
                 Honorable Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brenda Zastoupil, Self-represented, Forsyth, Montana

      For Appellee Department of Labor & Industry:

          Quinlan L. O'Connor, Chief Legal Counsel, Aleea K. Sharp, Agency
          Counsel, Montana Department of Labor & Industry, Helena, Montana

                        Submitted on Briefs:  May 22, 2024

                                Decided:  June 11, 2024

Filed:

                           _____
                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Brenda Zastoupil appeals from the June 21, 2023 Order Re: Petitioner's Request for Judicial Review entered by the Sixteenth Judicial District Court, Rosebud County, which affirmed the decision of the Unemployment Insurance Appeals Board (Board) that held Zastoupil was not entitled to additional unemployment compensation after she failed to accept an offer from her former employer to return to suitable work without good cause. We affirm.

¶3 Zastoupil worked for Ryan Restaurant Corporation (Ryan), which operated an Applebee's Restaurant, but was laid off when the restaurant temporarily closed during the COVID-19 pandemic. Her last day of work was March 15, 2020. Zastoupil filed a claim for unemployment compensation and received benefits for the weeks ending March 28, 2020 through June 26, 2020. Zastoupil called her employer several times in the weeks following her layoff, but the restaurant did not reopen its dining room for customer service until May 4, 2020.

¶4 On May 21, 2020, Ryan sent a letter advising Zastoupil that it had reopened its dining room "in compliance with the Governor's guidance and local health department guidelines." The letter stated, "[a]s a result, store management reached out to you the week

2

of April 27th regarding your scheduled return to work. Please contact your department manager or general manager regarding your rehire." In response to Ryan's letter, Zastoupil sent a letter to Ryan dated June 15, 2020, discussing the spread of the COVID 19 virus, and stating:

> [T]herefore, person-to-person spread of COVID-19 is likely to continue to occur under the current conditions in compliance with Governor Bullock's guidelines which continues to pose a health endangerment risk to my position as a server at Applebee's.
>
> Therefore, based on Governor Bullock's directive and my position as a server which poses a health endangerment risk as stated to Dave Roller and store management expressing positions being filled with full-time employees with health insurance and there is a reduced seating capacity, my position was not eligible for rehire.
>
> I appreciate your guidance and support at Applebee's. I wish you and the company the best success in the future.

¶5 In response to an inquiry from the Unemployment Insurance Division (UID) regarding Zastoupil's claim for benefits, Ryan acknowledged it had laid off Zastoupil due to the temporary closing of its restaurant, but explained: "However, we definitely needed her back. On May 11, 2020 Dave, [the] manager called her to ask her to return to work (she was serving roughly 20 hours per week before the shut down) and she told Dave she would not be returning – she said it was due to health concerns but did not provide other detail."

¶6 On November 15, 2021, UID issued a Determination that Zastoupil was disqualified from receiving further benefits. The decision explained that Zastoupil was "offered an opportunity on 5/11/21 to return to employment after your employer opened back up after the Covid-19 shutdowns. The position offered paid the prevailing rate of pay for the area

3

and was work you were qualified to perform." The Determination found that Zastoupil had not taken the offered work "because of Covid-19 concerns," but that good cause for her refusal had not been established in that Zastoupil had not shown there was a medical reason she could not return to work. Zastoupil then requested a Redetermination. UID's Redetermination decision found that it could not establish that Zastoupil had affirmatively refused to return to work prior to her letter of June 15, 2020, and therefore correspondingly extended her eligibility for benefits. However, it denied continuing benefits because good cause had not been established for Zastoupil's failure to return to work, as likewise found in the initial Determination.

¶7 Zastoupil appealed from the Redetermination and a hearing was conducted by a Hearing Officer on November 14, 2022. In his decision entered on November 22, the Hearing Officer found that the evidence disproved Zastoupil's assertion that she had not been offered work because she had been told that Ryan would be rehiring only employees who had worked at least one year and had health insurance, and stated, "[w]hether Applebees initially planned to rehire a limited number of employees does not change that by May 21, 2020, there was an offer to contact Applebees about returning to work. Similarly, whether the restaurant was reopening with limited capacity does not change that May 21, 2020 is a clear statement Ryan Restaurant Corp. was offering Zastoupil work." Regarding the health risk, the Hearing Officer reasoned that "Zastoupil argues the work presented a risk of COVID-19 infection, but did not present evidence Applebees was not following CDC or local health guidelines," or otherwise demonstrate that "the work was

4

unsuitable or could not be performed while observing COVID-19 emergency declarations or directives." The Hearing Officer thus affirmed UID's Determination.

¶8 Zastoupil appealed to the Board, which conducted a review with the parties on January 4, 2023, and issued its decision on January 9. The Board noted that Zastoupil had provided "an exhaustive analysis of COVID-19's impact and her interest not to return," but that, "[w]hile her concerns regarding COVID-19 were just, they were not attributable to the employer, and Zastoupil made her own decision not to return out of concern for her health." The Board expressly considered that the standards for compensation eligibility "were applicable to everyone in those conditions at that time" and concluded there was substantial, credible evidence that Zastoupil failed to return to work as found by the Hearing Officer.

¶9 Zastoupil petitioned the District Court for judicial review of the Department's final decision. The District Court methodically addressed the eligibility requirements and found that substantial evidence supported the Department's finding that Ryan had offered Zastoupil a position for returning to work that was suitable and that she had refused. It considered Zastoupil's phone record evidence of calls she had made to Ryan, but noted that there was no evidence of any calls made to Ryan after Ryan's letter offering Zastoupil the opportunity to return to work. The court concluded that the Department had properly construed Zastoupil's June 15, 2020 letter "as a rejection of the offer of work," noting Zastoupil's statement therein that, "I wish you and the company the best success in the future," and concluding that "Petitioner failed to accept Applebee's offer of employment." The court noted the Hearing Officer's citation to Emergency Rule V(2), adopted during the

5

pandemic, which similarly provided that a claimant may not refuse "to return to work if requested by the employer and suitable work can be performed in compliance with the emergency declarations and directives." Montana Administrative Register 24-11-357. Finally, the District Court considered the record and rejected Zastoupil's argument that the Department and Ryan had engaged in fraud by concealing documents. Zastoupil appeals.

¶10 "When reviewing the finality of a decision on claims for unemployment benefits made by the Unemployment Insurance Appeals Board, this Court must apply a statutory standard of review. Pursuant to § 39-51-2410(5), MCA, 'the findings of the board as to the facts, if supported by evidence and in the absence of fraud, are conclusive and the jurisdiction of the court is confined to questions of law.' More specifically, the findings of fact must be supported by substantial evidence." *Crouse v. State*, 2017 MT 254, ¶ 15, 389 Mont. 90, 403 P.3d 1260 (citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . It is more than a scintilla, but less than a preponderance of the evidence.'" *Crouse*, ¶ 15 (citations omitted).

¶11 Zastoupil states seven sub-issues on appeal, but they all converge within the question of whether the Department erred by finding that she did not satisfy the eligibility criteria for continued benefits. She argues the District Court's order was erroneously entered based upon "proven false findings" by the Hearing Officer and Board, that fraud was committed by Ryan and the Board, without which there would not be sufficient documentation to support the Department's decision, and that she sustained a constructive discharge that should qualify her for unemployment benefits.

¶12 However, a record review indicates very clearly that there was sufficient evidence to support the findings, including Zastoupil's own decision not to pursue a return to suitable work with Ryan, explained in her letter of June 15, 2020, and, despite her arguments, by a failure to prove with evidence that the work conditions implemented by Ryan for restaurant operations during the pandemic violated health guidelines or subjected her to an unreasonable personal health risk. This record does not support a claim of constructive discharge, but an individual decision not to return to work. "An individual is disqualified for benefits if the individual fails without good cause to: . . . (ii) accept an offer from a former employer or a new employer of suitable work that the individual is physically able and mentally qualified to perform." Section 39-51-2304(1)(a)(ii), MCA; *see also* Admin. R. Mont. 24.11.455(1)(b) Refusal of Work ("Pursuant to 39-51-2304(1), MCA, a claimant is disqualified for benefits if the claimant fails without good cause to: . . . (b) accept an offer of suitable work which the individual is physically able and mentally qualified to perform."). It is clear that Zastoupil was capable of performing her former work itself, and she does not contend otherwise, except for the health risks she perceived. Though she may have asserted those risks sincerely and in good faith, Zastoupil did not show that Applebee's was not in compliance with emergency declarations and directives when it requested her return to work.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the

7

law was correct, including its determinations that the Department's findings were sufficiently supported by the evidentiary record, and no fraud was committed.

¶14   Affirmed.[1]

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

---

[1] Zastoupil's arguments make several references to an "overpayment" issue, i.e., requesting dismissal of the case because "the Department of Labor & Industry, UI Division's Decision requesting Statement of Benefits Overpayment because this case is fraudulent." However, as the Department notes, the issue of a claimed overpayment of benefits was not raised or litigated before the Department at any stage of the proceeding, and no decision addressed it.